[No. G016599. Fourth Dist., Div. Three. Sept. 29, 1995.]

In re the Marriage of RONALD and LORI L. PADILLA.
RONALD PADILLA, Appellant, v.
LORI L. PADILLA, Respondent.

COUNSEL

Jeffrey W. Doeringer for Appellant.

Robert P. Des Jardins and Peter J. Flanagan for Respondent.

OPINION

SONENSHINE, Acting P. J.—

I

Ronald and Lori L. Padilla's marriage ended in 1990. Pursuant to a written agreement incorporated into their interlocutory decree, Ronald was ordered to pay $550 in monthly child support. In 1993, after new child support guidelines were enacted and the visitation schedule changed. Lori filed an order to show cause seeking an increase in child support and a contribution toward her attorney fees.

Ronald originally agreed to the increase. (Child support orders entered prior to July 1, 1992, are per se modifiable to conform to mandated guidelines. [Fam. Code, § 4069].) Prior to the hearing, he changed his mind, explaining he recently "resigned [his] current employment" to start his own business. "I firmly believe that once this business is on its feet, my earning potential will be as good or greater than existed at my previous employment. [¶] [] I did not willfully resign my employment at this time to evade my support obligations but resigned in order to afford myself the opportunity to embark on a business venture which has a much greater income potential than my previous employment. [¶] [] Therefore, I would request that the court order a reduction in child support in the interim. Once I start receiving a steady income I will increase my support payments. [¶] [] I will keep Petitioner continually advised of the progress of my business and the estimated date when I will be able to increase child support."

At the January 7, 1994, hearing the parties stipulated to modifications of the visitation order. Based on Ronald's previous income, the court found it had "the discretion to increase child support to a total amount of $797.00 . . . ." However, it explained it "considered Respondent's testimony that he is beginning a new business" and determined there was "no basis for change of child support at this time . . . ." It ordered "the current support of $550.00 per month continue as is" and set a six-month review hearing on July 7, 1994, to again consider child support. Findings and order after hearing were entered on January 26.

The review hearing took place on July 7. Ronald's business was still in the start-up phase. His declaration stated he was "self-employed" and "currently receiving no income." His attorney explained Ronald was actually earning about $1,500 a month, but repayment on $15,000 worth of business loans resulted in a monthly negative cash flow. There was no indication when Ronald's income would increase or accruing child support arrearages would be paid.

The findings and order entered on August 22 provide in relevant part, "There was no bad faith motive in respondent's quitting employment to open his own business. [But Ronald] had total control over his decision to stay in his existing employment or to leave. [¶] The court finds, and imputes income to [him] of $5,979.00 per month." The mandated guidelines for child support resulted in a $765 order. Ronald was also ordered to pay Lori $1,500 as his contributive share of attorney fees.

## II

■ Ronald's September 23, 1994, notice of appeal specifies he is appealing the August 22, 1994, order and "from any prior proceeding or ruling

within the parameters of Code of Civil Procedure § 906."[1] Ronald's opening brief designates the January 26, 1994, and August 22, 1994, orders as those from which he is appealing. However, as Lori explains, because Ronald waited too long to complain about the January 26 order (Cal. Rules of Court, rule 2(a)(3)), we are without jurisdiction to consider it. (Code Civ. Proc., § 906; *Kinoshita* v. *Horio* (1986) 186 Cal.App.3d 959 [231 Cal.Rptr. 241].)

We are unpersuaded by Ronald's arguments to the contrary. He maintains because the first order was "incomplete and specifically required the production of evidence for the calendared review hearing," it was interlocutory and an appeal therefrom would violate the one judgment rule. (Code Civ. Proc., §§ 904.1 & 906.)

Ronald misunderstands the nature of the January 26 order. He wanted the support order decreased; Lori wanted it increased. The court denied Ronald's request. The resulting order was neither interlocutory nor intermediate but a final determination. As an injured party he could have appealed; having failed to do so, he cannot be heard to complain now. (*In re Marriage of Acosta* (1977) 67 Cal.App.3d 899, 901 [137 Cal.Rptr. 33]; see also *County of Los Angeles* v. *Patrick* (1992) 11 Cal.App.4th 1246, 1250 [14 Cal.Rptr.2d 665].)

## III

We next consider the August 22 order and whether the trial court abused its discretion in basing the child support order on Ronald's earning capacity rather than his actual earnings. Ronald, relying on *Philbin* v. *Philbin* (1971) 19 Cal.App.3d 115, 121 [96 Cal.Rptr. 408], argues a court may consider earning capacity only when a parent deliberately attempts to avoid financial family responsibilities. In other words, he maintains bad faith is a condition precedent to imputation of income. For reasons we now explain, we disagree, concluding a court need not find bad faith before it can consider a parent's ability to earn in setting the amount of child support.

### The Philbin Rule

In *Philbin*, the mother maintained the current child support order should be premised on the father's previous earnings. The court refused, explaining his "financial situation is limited by the very nature of the business by which

---

[1] Code of Civil Procedure section 906 provides: "Upon an appeal pursuant to Section 904.1 or 904.2, the reviewing court may review the verdict or decision and *any intermediate ruling, proceeding, order or decision which involves the merits or necessarily affects the judgment or order appealed from or which substantially affects the rights of a party . . . .*" (Italics added.)

he earns his living; few in the entertainment field, with the exception of those with star status, are able to sustain high incomes." (*Philbin* v. *Philbin, supra*, 19 Cal.App.3d at p. 121.)

The court further noted, "[A]bility to earn . . . [may] be applied only when it appears from the record that there is a *deliberate* attempt on the part of the [payor] to avoid . . . financial family responsibilities by refusing to seek or accept gainful employment [citation], wilfully refusing to secure or take a job [citations], deliberately not applying himself [or herself] to his [or her] business [citation], intentionally depressing . . . income to an artificial low [citations], or intentionally leaving his [or her] employment to go into another business [citation]." (*Philbin* v. *Philbin, supra*, 19 Cal.App.3d at p. 121, italics added.)

On the basis of that language alone, *Philbin* has been cited as permitting the consideration of a parent's earning capacity in determining child support *only* when the payor's actions are motivated by a deliberate attempt to avoid family financial responsibilities. *Philbin* should not be read so narrowly.

Any comments regarding bad faith are dicta because the *Philbin* court did not address this issue. Rather, the court considered whether a child support order may be premised on a parent's former income level when *through no fault of the parent that income is no longer available*. Moreover, *Philbin* did not hold, even as dicta, that bad faith is a condition precedent to the imputation of income. It merely commented that *seems to be* the rule. (*Philbin* v. *Philbin, supra*, 19 Cal.App.3d at p. 121.) Indeed, *Philbin*'s reliance on *Baron* v. *Baron* (1970) 9 Cal.App.3d 933 [88 Cal.Rptr. 404] is telling. There, the court imputed income to a father simply because he voluntarily quit one job for a lesser paying position.

*Philbin does not* require a bad faith finding before earning capacity may be imputed to a parent. *Philbin does* hold earning capacity may only be considered when a parent unreasonably fails to avail himself or herself of employment possibilities. Simply stated a parent cannot be held to an unavailable income level, but a parent may have income imputed if he or she unreasonably fails to take advantage of an employment opportunity.

### The Regnery Rule

In *In re Marriage of Regnery* (1989) 214 Cal.App.3d 1367 [263 Cal.Rptr. 243], the court noted the Agnos Child Support Standards Act of 1984 was "consistent with previous decisional law and the reading of [it and *Philbin*] together creates a three-prong test before the capacity to earn

standard may be applied. Earning capacity is composed of (1) the ability to work, including such factors as age, occupation, skills, education, health, background, work experience and qualifications; (2) the willingness to work exemplified through good faith efforts, due diligence and meaningful attempts to secure employment; and (3) an opportunity to work which means an employer who is willing to hire. [Citations.] [¶] . . . When the ability to work or the opportunity to work is lacking, earning capacity is absent and application of the standard is inappropriate. When the payor is *unwilling* to pay and the other two factors are present, the court may apply the earnings capacity standard to deter the shirking of one's family obligations." (*Id.* at pp. 1372-1373, original italics.) ▮ We find *Regnery* compelling. A parent's motivation for reducing available income is irrelevant when the ability and opportunity to adequately and reasonably provide for the child are present. (*In re Marriage of Reese* (1977) 73 Cal.App.3d 120 [140 Cal.Rptr. 589].)

Public policy supports our conclusion. Because children's interests are a top priority (Fam. Code, § 4053, subd. (a)) and payment of appropriate support is a parent's primary obligation (Fam. Code, § 4053, subds. (a) & (d)),[2] a child support obligation " 'must be taken into account whenever an obligor wishes to pursue a different lifestyle or endeavor. . . . [C]hild . . . support [is] an overhead which must be paid first before any other expenses. . . . [A payor does] not have the right to divest himself [or herself] of his [or her] earning ability at the expense of . . . minor children.' " (*In re Marriage of Ilas* (1993) 12 Cal.App.4th 1630, 1635 [16 Cal.Rptr.2d 345]; see also *In re Marriage of Muldrow* (1976) 61 Cal.App.3d 327, 333 [132 Cal.Rptr. 48]; *Baron v. Baron, supra,* 9 Cal.App.3d 933.)[3] Conversely, a parent may voluntarily leave a job for one paying less when the children's reasonable needs are satisfied. (*In re Marriage of Williams* (1984) 155 Cal.App.3d 57 [202 Cal.Rptr. 10].)

We also find *In re Marriage of Simpson* (1992) 4 Cal.4th 225 [14 Cal.Rptr.2d 411, 841 P.2d 931] further validates our conclusion. While the

---

[2]We do not consider whether bad faith is necessary in the context of a spousal support order, where different policy considerations govern. Ronald's reliance on *In re Marriage of Meegan* (1992) 11 Cal.App.4th 156 [13 Cal.Rptr.2d 799] is therefore misplaced because there, another panel of this court considered a spousal support order.

[3]In *In re Marriage of Kirk* (1990) 217 Cal.App.3d 597 [266 Cal.Rptr. 76], the trial court considered whether a loan repayment to an employer which was automatically deducted from a father's paycheck should be considered when assessing his income. The court, citing *Philbin,* acknowledged the record failed "to suggest [the debt] was [a] sham, unenforceable or undertaken as a ruse to avoid child support." (217 Cal.App.3d at p. 606.) But the court concluded it was error to fail "to consider that the only rational inference derivable from the paperwork before the court was that this shift was a *voluntary diversion* of income to pay debt, resulting in deprivation of funds for child support." (*Id.* at p. 607, italics added.)

court did not address whether consideration of earning capacity is limited to instances of bad faith,[4] it cited the *Regnery* definition of earning capacity with approval and condoned imputation of income when a parent is able but unwilling to take advantage of a better paying employment opportunity. (4 Cal.4th at p. 234.)[5] *Simpson* also recognizes "the statutory guidelines governing . . . child support do not limit the circumstances under which the trial court may consider the earning capacity of the supporting spouse . . . with the exception that . . . reliance on earning capacity must be 'consistent with the best interests of the children.' [Citation.]" (*Id.* at p. 233.)[6]

## Conclusion

When the above considerations are applied to the facts presented here, the answer is obvious. As the trial court noted: "If you want to go into business and also pay your child support, you could do both. It may take you longer, but you could put child support away for a year. You could put it in the bank and then have it paid out. . . . That way your child would have support. Because, remember, the child support is for the child. So your child is not an involuntary participant in your risk taking."

Ronald held a well-paying job for many years which he quit within weeks of the first hearing because he wanted the freedom of self-employment and a chance for greater financial rewards. But despite a six-month grace period, he was still in the red, delinquent in child support and he did not know when

---

[4] The *Simpson* court remanded the matter to the trial court to redetermine the amount of income to be imputed because earning capacity should not be based "upon an extraordinary work regimen, but instead upon an objectively reasonable work regimen as it would exist at the time the determination of support is made." (*In re Marriage of Simpson, supra,* 4 Cal.4th 225, 234-235; see also *In re Marriage of Everett* (1990) 220 Cal.App.3d 846 [269 Cal.Rptr. 917].)

[5] The court summarized the evidence it found sufficient to support a bad faith finding. "Richard had worked primarily in theater for several years prior to the issuance of the temporary support awards and, as a union member with 17 years' seniority, had substantial control over his selection of jobs. Although Richard testified he shifted to television studio work in order to avoid working nights and weekends so as to be able to spend more time with his child, the trial court was entitled to disbelieve that testimony. Richard did not testify that theater jobs required that he work excessive hours, but only that he had chosen to work more than one job per day and to work excessive hours. Moreover, he made the dramatic shift in job choice immediately following the temporary support awards in July 1989 and thereafter failed to comply with those awards and to pay any support whatsoever, except for the nominal sum of $100 through the date of trial in October 1989." (*In re Marriage of Simpson, supra,* 4 Cal.4th at p. 234.)

[6] *Simpson* cites *In re Marriage of Everett, supra,* 220 Cal.App.3d 846, 859, with approval. (*In re Marriage of Simpson, supra,* 4 Cal.4th at p. 234.) *Everett* held, "The Agnos Act now permits attribution of 'earning capacity' to an unemployed or underemployed parent without specifically narrowing such consideration to deliberate attempts to foil support obligations." (220 Cal.App.3d at p. 859.)

his financial situation would improve. His actions may have been sincerely motivated, but the result is the same. No matter the reasons, his children's needs were unfulfilled.

Statutory commands and the inherent responsibility parents owe their children lead us to conclude the bad faith rule, as applied to child support, if not ill conceived in the first instance, can no longer be supported. Once persons become parents, their desires for self-realization, self-fulfillment, personal job satisfaction, and other commendable goals must be considered in context of their responsibilities to provide for their children's reasonable needs. If they decide they wish to lead a simpler life, change professions or start a business, they may do so, but only when they satisfy their primary responsibility: providing for the adequate and reasonable needs of their children.[7]

The judgment is affirmed. Respondent shall be awarded her costs on appeal.[8]

Wallin, J., and Rylaarsdam, J., concurred.

---

[7]We do not imply a former income level will always be imputed to a parent who voluntarily leaves a high-paying job for one paying less. For example, income will not necessarily be imputed to a highly paid lawyer or business executive who accepts a government position resulting in a significant reduction in income. In that circumstance, the court, in exercising its discretion in determining the support level, will look to the parent's ability to adequately meet the reasonable needs of the children.

[8]Our affirmance of the judgment moots Ronald's attorney fee appeal.