[No. A071772. First Dist., Div. Five. June 28, 1996.]

In re the Marriage of FREDERICK SCOTT and ROBYN PAULIN.
FREDERICK SCOTT PAULIN, Respondent, v.
ROBYN PAULIN, Appellant.

## COUNSEL

Hassard Bonnington and Richard Johnston for Appellant.

Dobbins, Weir, Thompson & Stephenson and Cynda Riggins Unger for Respondent.

## OPINION

**KING, J.**—In this case we hold that substantial evidence supports the trial court's finding that a child support payor was entitled to a statutory hardship deduction due to justifiable expenses resulting from the birth of twins to

himself and his present wife which caused extreme financial hardship. We also hold, where the former wife had remarried and had voluntarily ceased her employment, the trial court did not abuse its discretion by fixing her income, for purposes of the statutory child support formula, based upon her earning capacity.

Robyn Paulin appeals from a superior court order reducing the child support paid by her former husband, Frederick Scott Paulin, for their two minor children.[1] On appeal, her contentions are twofold: (1) that the court erred by granting Scott a hardship deduction; and (2) that the court erred in attributing income to her when she was no longer working. We affirm.

*Facts*

Robyn and Scott's 13-year marriage was dissolved by order of the Solano County Superior Court effective October 18, 1991. There were two minor children of the marriage, Scott and Tiffany. By stipulated order dated November 4, 1994, Scott was ordered to provide $1,511 per month child support based upon his gross monthly salary of $5,405 as a police sergeant in Vacaville and Robyn's monthly wages of $1,505 as a part-time registered nurse.

On June 14, 1995, Scott and his new wife had twin boys. About two weeks later, Scott filed a request for a "hardship deduction" reducing his monthly child support for Scott and Tiffany from $1,511 to $1,119 because he now had four children, instead of two, to support. After a hearing, the trial court reduced Scott's monthly child support from $1,511 to $1,338 (a difference of $173 per month) due to the birth of the twins. In calculating the modified child support, the court used Robyn's previously established income of $1,505 per month even though she was unemployed. Robyn timely noticed this appeal. We review the court's order for an abuse of discretion. (*County of Lake* v. *Antoni* (1993) 18 Cal.App.4th 1102, 1105 [22 Cal.Rptr.2d 804].)

*Discussion*

Family Code section 4070[2] recognizes that if a parent "is experiencing extreme financial hardship due to justifiable expenses" resulting from specified circumstances, the court may modify child support by allowing a deduction from the income of the party experiencing the hardship. (See

---

[1]For ease of reference, we will refer to the parties as Robyn and Scott. (*In re Marriage of Smith* (1990) 225 Cal.App.3d 469, 475-476, fn. 1 [274 Cal.Rptr. 911].)

[2]All statutory references are to the Family Code.

§ 4059, subd. (g).) The circumstances evidencing hardship are set out in section 4071 and include a deduction for "[t]he minimum basic living expenses of either parent's natural or adopted children for whom the parent has the obligation to support from other marriages or relationships who reside with the parent." (§ 4071, subd. (a)(2).) ■ Thus, the Legislature has recognized that in the proper case, it may be just to reduce an existing child's support payments if that is necessary to alleviate his or her parent's extreme financial hardship occasioned by the birth or adoption of new children. (*Haggard* v. *Haggard* (1995) 38 Cal.App.4th 1566, 1571 [45 Cal.Rptr.2d 638], and cases cited therein [hardship deductions limited to circumstances specifically recognized in statute].)

■ Robyn relies heavily on the terms of section 4070, stating that the court may allow a hardship deduction only if the parent is "experiencing extreme financial hardship." The Legislature has not defined "extreme financial hardship" and no case has yet defined this term.

Each of the considerations raised by Robyn is valid—that a hardship deduction is not a "foregone conclusion" on the birth of new children; that the family's income, as well as purported expenses, have to be considered in making the "hardship" determination; and that Scott's responsibility as a parent "was not to seek to provide less for some of his children because he had others, but to provide adequately for all of them." But the persuasiveness of these points turns upon the context in which they are applied. As Robyn accurately notes, section 4070 would be violated if Donald Trump, J. Paul Getty, or Bill Gates approached the court requesting a hardship deduction for the birth of new children. This is not the case before us. As Scott's counsel pointed out, "[w]e have solid, middle-class people. The cost of living of the middle class for these people takes every penny they have."

There was substantial evidence before the court to support the conclusion that the birth of the twins had created an extreme financial hardship for Scott. There was evidence, notably an income and expense declaration prepared for this hearing, that reflected that Scott had a net monthly disposable income of $3,943 before payment of child support, with total monthly expenses (including expenses attributable to the twins) of $4,753. His counsel made an offer of proof that the birth of these children had raised Scott's out-of-pocket expenses by $1,000 a month.

The trial court found that Scott had proved a hardship entitling him to a reduction of his child support obligation and reduced the monthly support payment from $1,511 to $1,338. In its written order, the court made the required findings. (§ 4072.) The court explained that it "determined the

amount of the hardship deduction by causing the allowable amount under Family Code § 4071(b) to be computer calculated, and setting the deduction at one half that amount to reflect the new children's parents' shared responsibility for the support of the new children." In calculating how much child support should be paid, the court considered Robyn's ability to earn her previously established income of $1,505 per month as distinguished from her actual earnings of zero. (For an explanation of computer-generated child support awards, see our prior opinion in *In re Marriage of Carter* (1994) 26 Cal.App.4th 1024, 1027, fn. 3 [33 Cal.Rptr.2d 1].)

We reject Robyn's overriding contention that the court misunderstood and misapplied the statutory scheme governing hardships.[3] To the contrary, the record indicates the court's awareness that the granting of a hardship "is not an automatic." The record also contains the court's finding that there were necessary expenses associated with the birth of the twins, such as "food, clothing, shelter, as well as child care" which were "far in excess" of the hardship granted in this case. The court also observed that each of the parties would probably be disappointed by its decision. Under the circumstances, we find no abuse of discretion.

Robyn next argues that the court erred in attributing income to her based on her earning capacity, when in fact, at the time of the hearing, she was unemployed. (See § 4058, subd. (b).) " 'Earning capacity is composed of (1) the ability to work, including such factors as age, occupation, skills, education, health, background, work experience and qualifications; (2) the willingness to work exemplified through good faith efforts, due diligence and meaningful attempts to secure employment; and (3) an opportunity to work which means an employer who is willing to hire.' " (*In re Marriage of Padilla* (1995) 38 Cal.App.4th 1212, 1218 [45 Cal.Rptr.2d 555], quoting *In re Marriage of Regnery* (1989) 214 Cal.App.3d 1367, 1372-1373 [263 Cal.Rptr. 243].) We review the trial court's decision to consider Robyn's earning capacity in setting support under an abuse of discretion standard. (*In re Marriage of Simpson* (1992) 4 Cal.4th 225, 234 [14 Cal.Rptr.2d 411, 841 P.2d 931].)

---

[3]Commissioner David L. Haet, the judicial officer who heard this case, is one of the most experienced and competent family law judicial officers in California. He was an experienced family law attorney, indeed, a certified family law specialist, prior to becoming the Solano County Superior Court's Family Law Commissioner seven years ago. The record discloses that he fully understood the intricacies of when and whether to allow a hardship deduction under California's statutory and case law.

Robyn, who had remarried,[4] did not testify at the hearing on Scott's motion to modify his child support obligation. Instead, she submitted a declaration indicating that her previous employment as a registered nurse at a convalescent hospital had been "one of the most stressful experiences of (her) life." She explained that she voluntarily severed her employment due to questionable recordkeeping practices of her employer that she believed placed her nursing license "at risk." Regarding efforts to find other employment, Robyn's declaration went on to state that she had "periodically reviewed help wanted ads and similar sources" and there had "yet to be an opening appropriate for (her) level of training and experience . . . ."

Robyn's declaration was met with skepticism. At the hearing, Scott's attorney expressed dismay "that the employment we have fought for a year and a half to get her to take" had been "given up." Scott's attorney argued that the assertion in Robyn's declaration "that there are no jobs out there" was not substantiated with any documentation that she had actually looked for employment. The lack of documented efforts to replace her lost employment was characterized as an unwillingness, as opposed to inability, to work. Robyn was not present at the hearing to refute these contentions. (4)(See fn. 5.) The trial court used Robyn's previously established monthly income of $1,505 in setting support "without prejudice," leaving her the opportunity to try to prove, with more sufficient evidence, that the loss of her income was justifiable.[5]

■■■ Based upon our review of this record, we conclude that the court did not abuse its discretion when it concluded that it was not appropriate, on this incomplete record, to change the monthly income figure for Robyn's previous employment to zero based on her current unemployment. (*In re Marriage of McQuoid* (1991) 9 Cal.App.4th 1353, 1359 [12 Cal.Rptr.2d

---

[4]The Legislature recently enacted section 4057.5 precluding consideration of the income of a new mate of a parent, except in specified extraordinary circumstances, when setting support for a child of a prior relationship. Although Robyn had remarried, no issue was raised below or on appeal as to consideration of her community property share of her current husband's income from his law practice. Thus the issue of whether the Legislature, for child support purposes, can exclude consideration of a remarried parent's share of community property income is not before us.

[5]The amount of child support ordered pursuant to the statutory formula in section 4055 takes into account the income of each parent. If only one parent is employed the full burden of child support can fall on the employed parent, although both parents have the responsibility to support the child.

When child support is ordered at a time when both parents are employed and thereafter one arbitrarily decides to stop working, perhaps because of remarriage to someone with significant income, the court must possess the discretion to consider that parent's earning capacity in ordering child support orders. Otherwise, one parent by a unilateral decision could eliminate his or her own responsibility to contribute to the support of the child, causing the entire burden of supporting the child to fall upon the employed parent.

737].) Consequently, since the court's order had the effect of maintaining the "status quo" (cf. *In re Marriage of Stephenson* (1995) 39 Cal.App.4th 71, 82-83 [46 Cal.Rptr.2d 8]) and Robyn is not barred from seeking relief in further proceedings, we view her attack on the trial court's use of earning capacity as opposed to actual earnings to be premature.

Scott requests his attorney fees and costs in defending the court's order on appeal. (§§ 271, 2030, 2032.) The issue of Scott's entitlement to attorney fees at the trial level was litigated and denied. The court found that the area of hardships, while dictated to some degree by the Legislature, was "not a given" and that Robyn's arguments were presented in good faith. However, the court expressed the hope that in the future, that the "parties will sit down and discuss these matters . . . because at some point there will very easily be some sanctions in this case, and/or fees, in the future."

The future may have arrived. Scott is the prevailing party in this appeal in which Robyn has been represented by her attorney husband. We assume this representation has been without charge to her, while Scott has been charged for his appellate attorney fees. Scott's request for attorney fees on appeal should be presented to the trial court to act in its discretion to achieve an equitable result.

The judgment is affirmed. Scott shall recover his appellate costs, and may file a motion with the trial court for appellate attorney fees.

Peterson, P. J., and Haning, J., concurred.