[No. C024945. Third Dist. Aug. 7, 1997.]

In re the Marriage of BARRY NEAL LaBASS and CATHERINE
WHITMAN MUNSEE.
BARRY NEAL LaBASS, Respondent, v.
CATHERINE WHITMAN MUNSEE, Appellant.

## COUNSEL

Hoseit & Koelewyn and H. L. Koelewyn for Appellant.

Carroll, Burdick & McDonough, Gary M. Messing and Cathleen A. Williams for Respondent.

## OPINION

CALLAHAN, J.—After divorcing respondent Barry Neal LaBass (Barry) in Sacramento, appellant Catherine Whitman Munsee (Catherine) moved with their minor children to the Los Angeles area. However, instead of working full time as her ex-husband did, Catherine, who had a master's degree in English literature, decided to teach part time at a local college while pursuing another postgraduate degree.

Barry petitioned the court to modify his child support obligation by imputing to Catherine the starting salary of a full-time school teacher rather than her actual earnings as part-time lecturer at a community college. The court granted the requested relief.

Catherine appeals, contending the court erred because (1) it failed to articulate reasons for departing from the guideline formula; (2) the imputation of income was unsupported by substantial evidence; (3) as a matter of public policy the court should not be permitted to impute income to the recipient-parent who is the primary caretaker of the minor children for purposes of reducing the amount of child support payable by the obligor-parent; and (4) the modification order violates the parties' marital settlement agreement. We find none of these arguments meritorious and affirm the order.

### BACKGROUND

Catherine and Barry got married in 1988 and separated in 1994. There were two children of the marriage, Emily born in 1989 and Jane born in

1990. During the marriage, Barry worked full time as a high school teacher while Catherine worked part time and completed her master's degree in English literature. Once she got her degree, she started working full time at Home Depot.

In July 1995 Catherine took the children to Southern California for a vacation. On August 27, she announced that the children were not returning and would be staying with her at her parents' house. She warned Barry not to take legal steps to bring them back to Sacramento, stating she would "bury" him if he tried to do so. She told him ". . . I don't have a job, I won't work, and so you're going to have to pay my attorney's fees no matter how costly they are." The divorce became final in September 1995, with Barry conceding in the settlement agreement Catherine's right to move the children from Sacramento "to either pursue her Ph.D. studies or for employment purposes."

Catherine did not pursue a Ph.D. She moved into a rent-free studio upstairs from her parents and took occasional substitute teaching jobs until January 1996 when she accepted a part-time instructor position at a local community college which paid her $824 per month. She also began taking courses toward a second master's degree—this time in fine arts.

Although the children were in Barry's care during virtually the entire summer of 1996, Catherine did not work during that period, explaining that she was involved in "writing projects and developing new curriculum for [her] classes." In the fall she was scheduled to continue as a part-time lecturer at the same salary rate. Barry continues to work at his job as a full-time science teacher, earning $3,081 per month. He also took a summer job with Sacramento City College which earned him an additional $3,500.

The order which gives rise to this appeal stems from an order to show cause regarding child support filed by Barry. At the hearing, it was disclosed that Catherine had an emergency teaching credential that allows her to substitute teach anywhere in the Los Angeles School District, regardless of subject matter. Barry, who had taught high school for three years in Los Angeles, testified he believed Catherine could secure full-time employment as a teacher there. A copy of the Los Angeles Times revealed numerous want ads soliciting applications for teaching positions from persons with Catherine's qualifications. A pay scale obtained from the Los Angeles School District showed a starting salary of $31,753 for a teacher with a bachelor's degree plus 70 units, which Catherine testified she had earned.

In her testimony, Catherine admitted full-time employment was not part of her present plans. "I have never intended to be a full-time employee outside

of the home while my children were young . . . ." She felt part-time work plus her pursuit of a second postgraduate degree was "enough for me to handle right now in addition to my concerns as a parent and being involved in my children's school."

The trial court modified Barry's child support obligation by lowering it from $567 to $342 per month. The modification was the result of the court's imputing to Catherine a gross income of $2,646 per month, based on "Los Angeles Unified School District base salary for B.A. + 70 units."

APPEAL

I

*Statement of Reasons*

Catherine contends the order predicating child support on "imputed" income rather than her actual income constitutes a departure from the mandatory statewide child support guideline set forth in Family Code section 4050 et seq. (all further statutory references are to this code). Because section 4056, subdivision (a) requires the court to state reasons in writing or on the record for departing from the guideline, Catherine asserts the order is inherently defective and must be reversed. Catherine misreads the statute.

Section 4052 announces that the court shall adhere to the uniform guideline and "may depart from the guideline only in the special circumstances set forth in this article." The guideline is based on the algebraic formula contained in section 4055, subdivision (a), the key element of which is each parent's net monthly disposable income. This figure is computed by totaling "annual gross income" less allowable deductions, and dividing by 12. (Hogoboom & King, Cal. Practice Guide: Family Law 1 (The Rutter Group 1997) ¶ 6:172, p. 6-61, rev. #1, 1997 (Hogoboom); §§ 4058, 4059, 4060.)

It is true, as Catherine maintains, that the guideline formula is presumptively correct and may not be departed from without an express finding of special circumstances. (*In re Marriage of Carter* (1994) 26 Cal.App.4th 1024, 1028-1029 [33 Cal.Rptr.2d 1].) The court here, however, did not depart from the guideline formula. It merely exercised the discretion expressly vested in it by section 4058, subdivision (b) (section 4058(b)), to

substitute *earning capacity* for *actual income* in applying the guideline formula.[1]

In her reply brief, Catherine cites the following portion of section 4053: "In implementing the statewide uniform guideline, the courts shall adhere to the following principles: . . . (c) The guideline takes into account each parent's *actual* income and level of responsibility for the children." (Italics added.) This language, she maintains, demonstrates the Legislature's clear intent that only a parent's *actual* earnings may be plugged into the guideline formula. We see it differently.

First, section 4053 does not prescribe hard-and-fast rules; it only denominates a set of "principles." The "principle" of subdivision (c) states that the guideline "*take*[] *into account*" the parent's actual income. (Italics added.)

Catherine overlooks the very next "principle," set forth in subdivision (d) of section 4053 which states, "Each parent should pay for the support of the children *according to his or her ability*." (Italics added.) Read together, these two statutes ensure that, while actual income must be *considered*, so must the parent's ability to earn. Section 4058 actuates both of these principles by allowing the court to substitute earning capacity for actual earnings, consistent with the best interest of the child. Thus, no inconsistency results between the cited "principle" and imputation of income, because actual income is still "take[n] into account."

Since there was no departure from the guideline formula, Catherine's first claim of error must be rejected.

## II

### Substantial Evidence Regarding Earning Capacity

Catherine challenges the sufficiency of the evidence to support the court's imputation to her of a starting full-time teacher's salary.

In *In re Marriage of Padilla* (1995) 38 Cal.App.4th 1212 [45 Cal.Rptr.2d 555] (*Padilla*) the court reviewed the three-pronged test set forth in *In re Marriage of Regnery* (1989) 214 Cal.App.3d 1367 [263 Cal.Rptr. 243] which must be met before the trial court may utilize a parent's earning capacity rather than actual income in computing child support.

" 'Earning capacity is composed of (1) the ability to work, including such factors as age, occupation, skills, education, health, background, work

---

[1]Section 4058(b) states: "The court may, in its discretion, consider the earning capacity of a parent in lieu of the parent's income, consistent with the best interests of the children."

experience and qualifications; (2) the willingness to work exemplified through good faith efforts, due diligence and meaningful attempts to secure employment; and (3) an opportunity to work which means an employer who is willing to hire.' " (*Padilla, supra,* 38 Cal.App.4th at p. 1218.) If a parent is unwilling to work despite the ability and the opportunity, earning capacity may be imputed. (*Id.* at p. 1217.) A parent's motivation for not pursuing income opportunities is irrelevant when applying the *Regnery* test. (*Id.* at p. 1218.)[2]

▮ At the hearing in the trial court evidence was introduced that: (1) Catherine had a bachelor's degree plus 70 units as well as an emergency teaching credential allowing her to substitute teach anywhere in the Los Angeles School District, regardless of subject matter; (2) there were numerous job opportunities for full-time teachers in the greater Los Angeles area; and (3) the starting salary for a teacher with Catherine's credentials was $31,753 per year.

Furthermore, Catherine made no secret of her intent to avoid working full time. She did not work during the summer even though the children were in Barry's care during that time. She testified that she had made the choice to pursue a second postgraduate degree and work only part-time because she wanted to spend more time with her children. In fact, when asked point blank whether she would accept a full-time teaching job in Los Angeles at a salary of $31,753 per year if it were offered to her she answered, "[d]efinitely not" despite the fact that after-school child care was available.

We find substantial evidence to support the court's implied finding that Catherine had both the ability and the opportunity to work full time but was unwilling to do so.

Catherine complains the Los Angeles Times help wanted ads were inadmissible hearsay (Evid. Code, § 1200) and should not have been relied upon by the trial court to establish that she could secure a teaching position. However, the court properly ruled the ads were admissible for the nonhearsay purpose of showing that offers to bargain existed. (*Lonergan* v. *Scolnick*

---

[2]Some early cases held that imputation of income may only occur where the court finds the parent in question was deliberately trying to avoid his or her child support obligations. (E.g., *Philbin* v. *Philbin* (1971) 19 Cal.App.3d 115, 121 [96 Cal.Rptr. 408]; *In re Marriage of Catalano* (1988) 204 Cal.App.3d 543, 555 [251 Cal.Rptr. 370].) This interpretation no longer prevails—recent decisions of the Courts of Appeal now recognize a finding of bad faith is no longer a prerequisite: "As long as ability and opportunity to earn exists, . . . the court has the discretion to consider earning capacity when consistent with the child or children's best interests." (*In re Marriage of Hinman* (1997) 55 Cal.App.4th 988, 999 [64 Cal.Rptr.2d 383]; see also *Padilla, supra,* 38 Cal.App.4th at p. 1217; *In re Marriage of Everett* (1990) 220 Cal.App.3d 846, 859 [269 Cal.Rptr. 917].)

(1954) 129 Cal.App.2d 179, 183 [276 P.2d 8].) Also, the ads corroborated Barry's opinion testimony regarding the availability of teaching positions. Barry had some knowledge upon which to form this opinion, since he himself recently taught in the Los Angeles School District. Opinion testimony may be based on hearsay as long as it is reasonably reliable. (1 Witkin, Cal. Evidence (3d ed. 1986) The Opinion Rule, § 477, p. 448.)[3]

Catherine asserts the court's implied finding she *would have been hired* as a teacher was based on guesswork. Her argument, however, improperly shifts the burden of proof to Barry. ■ A parent does not " ' "have the right to divest himself [or herself] of his [or her] earning ability at the expense of . . . minor children." ' " (*Padilla, supra,* 38 Cal.App.4th at p. 1218.) When a parent decides not to seek employment to the best of his or her ability, the court must retain discretion to impute income—otherwise "one parent by a unilateral decision could eliminate his or her own responsibility to contribute to the support of the child, causing the entire burden of supporting the child to fall upon the [fully] employed parent." (*In re Marriage of Paulin* (1996) 46 Cal.App.4th 1378, 1384, fn. 5 [54 Cal.Rptr.2d 314].) ■ While Catherine may choose to pursue her education and spend more time with her children she may not use this choice to avoid her obligation to contribute financially to their support, unless the court finds that such decision is in the best interests of the minor children. (*In re Marriage of Ilas* (1993) 12 Cal.App.4th 1630, 1639 [16 Cal.Rptr.2d 345].)

Barry showed that Catherine was able and qualified for work as a teacher, that there were vacancies for teachers in the Los Angeles School District and that Catherine had child care available. These facts were sufficient for the court to apply section 4058(b). Barry bore no burden to convince the court that Catherine *would have* secured a full-time job had she applied. Rather, it was incumbent upon Catherine to show that, despite reasonable efforts, she could not secure employment despite her qualifications. (Cf. *In re Marriage of Stephenson* (1995) 39 Cal.App.4th 71, 83, fn. 7 [46 Cal.Rptr.2d 8].) Given Catherine's total unwillingness to seek out full-time work, the imputation of income was justified.[4]

---

[3]Catherine claims the Los Angeles School District pay scale upon which the trial court relied to figure her imputed starting salary was never introduced into evidence. The argument is unfounded. The exhibit list shows the document was marked and received into evidence and Barry's counsel expressly made reference to it in her closing statement.

[4]The court's ruling was also supported by evidence indicating that Catherine was not being entirely truthful in her income and expense declaration about her income. For example, Barry's counsel pointed out that month after month, Catherine's bank deposits exceeded the amount of income that should have been available to her from her part-time job and Barry's support check. On cross-examination Catherine had no explanation for the discrepancies.

### III

*Public Policy*

Catherine argues that for policy reasons, women who have primary custody of the children should never be subject to the income imputation provisions of section 4058(b). She claims that the policy considerations behind the *Regnery* line of cases imputing income to the supporting parent should not apply to a "care giver" whose refusal to realize her earning potential is motivated by *her* perception of "the best interests of the children."

This sweeping claim finds no support in case law or the guideline language. Section 3900 and section 4053, subdivision (b), state unequivocally that both parents are equally responsible for the support of their children. Accordingly, section 4058(b) makes no distinction between custodial and noncustodial parents. (See *In re Marriage of Paulin, supra*, 46 Cal.App.4th at pp. 1384-1385 [upholding court's imputation of previously established income of $1,505 per month to custodial mother even though she was unemployed].)

Section 4058 is unmistakably clear that the only qualification to the discretionary imputation of income is that it be consistent with the children's best interest. We decline to carve out an exception to section 4058 for caregiver parents that would be inharmonious with the language and policy goals articulated by the Legislature.

### IV

*Contravention of Marital Settlement Agreement*

■ The judgment entered in September 1995 which incorporated a settlement between the parties provided in part: "If [Catherine] leaves the area, [Barry] shall continue to pay one-half of the education or work-related child care expenses *provided the education related expenses shall be limited to a term of 2 years ending June 1, 1997*." (Italics added.)

Catherine cites this language to support the argument that the order modifying child support "contradicts the intent of the parties" that Catherine be able to complete her education until June 1997 before commencing to work full time. We disagree.

The provision simply puts a time limit on Barry's obligation to pay for education related to child care expenses. Nothing in the agreement sanctions

Catherine working part time as a lifestyle choice in derogation of her duty to support her children.

Assuming the provision could be read in the manner Catherine desires, it would be unenforceable as a matter of law. The court's jurisdiction over child support issues may not be restricted by the parents, and any agreement purporting to modify or divest the court's jurisdiction over child support is void as contrary to public policy. (Hogoboom, *supra*, ¶ 6:23, p. 6-11, rev. #1, 1997; *In re Marriage of Lambe & Meehan* (1995) 37 Cal.App.4th 388, 392-393 [44 Cal.Rptr.2d 641]; *In re Marriage of Ayo* (1987) 190 Cal.App.3d 442, 449 [235 Cal.Rptr. 458].)

## DISPOSITION

The order appealed from is affirmed.

Scotland, Acting P. J., and Nicholson, J., concurred.

A petition for a rehearing was denied September 3, 1997, and appellant's petition for review by the Supreme Court was denied October 22, 1997.