Filed 9/17/25  Riverside County Dept. of Child Support Services v. Sanderson CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| RIVERSIDE COUNTY DEPARTMENT OF CHILD SUPPORT SERVICES, | E083830 |
| Plaintiff and Respondent, | (Super.Ct.No. RIK1600156) |
| v. | OPINION |
| BREANNA N. SANDERSON, | |
| Defendant and Appellant; | |
| JEFFREY MILLARD, | |
| Respondent. | |

APPEAL from the Superior Court of Riverside County.  Sharunne L. Foster, Temporary Judge.  (Pursuant to Cal. Const., art VI, §21.)  Reversed with directions.

Breanna Sanderson, in pro. per., for Defendant and Appellant.

Rob Bonta, Attorney General, Cheryl L. Feiner, Assistant Attorney General, Maureen C. Onyeagbako and Jennifer C. Adams, Deputy Attorneys General, for Plaintiff and Respondent.

1

No appearance for Respondent.

Defendant and appellant Breanna Sanderson appeals from the family court's order requiring her to pay $664 each month in child support. In June 2023, plaintiff and respondent Riverside County Department of Child Support Services (DCSS) brought a motion for modification of child support for the three children of Sanderson and Jeffrey Millard.[1] After two hearings, the family court rejected that Sanderson was disabled, and imputed a full-time minimum wage income to Sanderson and Millard. It set the amount of child support to be paid by Sanderson to Millard based on this income.

Sanderson claims on appeal as follows: (1) "The court abused its discretion in claiming lack of evidence of disability and inability to work and imputed income to calculate child support order"; (2) "The court applied the wrong legal standard"; (3) "The court's decision is not supported by the facts"; and (4) "The court used unfair bias.".

### FACTUAL AND PROCEDURAL HISTORY[2]

Sanderson and Millard have three children born in 2006, 2008 and 2012. On July 27, 2023, a hearing was held on a request for modification of child support, brought by

---

[1] Millard has not made an appearance in this case.

[2] The record in this case is limited. Sanderson refers in her "Factual and Procedural History" to events occurring prior to July 27, 2023. She discusses the contents of a supplemental security income (SSI) award letter (SSI Award Letter), which has not been made part of the record on appeal. She also refers to conversations with DCSS and hearings held prior to July 27, 2023, that are not part of the record. The record only pertains to those hearings held on July 27, 2023, and October 12, 2023, and filings from July 31, 2023, through the notice of appeal filed on May 1, 2024. As such, this court will not consider the additional facts included in Sanderson's briefs that are not supported by the record on appeal.

DCSS.[3]  As described by counsel for DCSS, a current order was in place that Millard pay $575 in child support each month that had been entered on May 19, 2022.  The current dispute involved Sanderson's income.  Sanderson was paying no child support.  Millard's counsel alleged that Sanderson should be imputed with full-time minimum wage income, but Sanderson, who was representing herself, disputed her income.  Millard's counsel stated that Sanderson claimed to be disabled and unable to work.  However, Sanderson had never provided documents to show her disability nor any application to obtain disability benefits.

Sanderson responded, "I have paperwork into the Child Support Services that of my SSI award letter that states that I am disabled completely, one hundred percent permanently as of November 24th, 2014."  Sanderson provided the SSI Award Letter to the family court.  She was receiving no disability income because of her household income; she was remarried and had two stepchildren.  DCSS affirmed it had received the letter from 2020 regarding Sanderson's disability, but had requested an updated letter on the status of her disability.  Sanderson insisted that SSI only recertifies every six years and she was still considered disabled.  Millard's counsel agreed with DCSS that current information as to her disability needed to be provided, as Sanderson was able to drive and take care of their children and her two stepchildren.

---

[3]  The request for modification is not part of the record on appeal.

The family court reviewed the SSI Award Letter.[4]  The family court stated on the record, "I don't see anything in this letter saying that you're forever disabled or that you are currently disabled."  The family court advised Sanderson that she could have brought a doctor's note showing that she was still currently disabled.  Sanderson advised the family court that she was able to drive, was attending school with "accommodations," and that she cared for her children and stepchildren.  However, she was still considered disabled by the Social Security Administration (SSA).

The family court stated for the record that based on the income and expense declaration provided by Sanderson, she had completed high school and two years of college.  The family court also "took judicial notice" of the fact that there were "multiple minimum wage jobs in our current job market," including work-from-home jobs and jobs that could accommodate reasonable "requests for accommodation."  The family court found that Sanderson had an ability to work in some capacity and there had not been a sufficient showing of a current inability to work based on disability.  Sanderson requested a continuance in order to provide the necessary paperwork to show she was disabled.  The family court agreed to continue the matter, but it made temporary orders as to child support.

---

[4]  As stated, the SSI Award Letter is not included in the record on appeal.

The family court found that both parties were imputed with full-time minimum wage income. Sanderson was to pay Millard $925 each month commencing on July 1, 2023. This was based on the minimum wage of $15.50 per hour and 40 hours each week. The trial court agreed to a continuance in order for Sanderson to provide proof of disability that she could not work in any capacity. Both parties were ordered to file updated income and expense declarations and Sanderson was ordered to provide supporting documentation of disability no later than 30 days prior to the continued hearing. The family court advised Sanderson on how to obtain help with getting the discovery that she needed and DCSS provided a medical verification form to Sanderson so she could get it signed by a doctor to show her limitations. DCSS agreed to prepare an order after hearing.

The family court signed the order after hearing on August 1, 2023 (temporary order). It included that the family court ordered a child support payment of $925 to be paid by Sanderson to Millard beginning on July 1, 2023. It further stated, "the court finds sufficient evidence to impute both parents with full time minimum wage income in calculating guideline child support. The matter is set for review hearing and the court reserves jurisdiction to modify support retroactively to 07/01/23." The review hearing was set for October 12, 2023.

Sanderson brought a motion to set aside the temporary order. She alleged, "Temporary Orders were made which went against already established judicial practices as described in California Judges Benchguide 203: AB 1058 Child Support Proceedings: Establishing Support chapter 5 (V), section B, subsection 1, which directs how to

5

compute Statewide Uniform Child Support Guideline when either or both parents have SSI Award.  Income for Parent 2 [Sanderson] cannot be imputed and must be set at $0 or actual amount received by Social Security Administration for Supplemental Security Income (SSI).  Temporary Orders place [Sanderson] in severe financial distress and possible legal penalties and violate her freedom from discrimination from being disabled."  She insisted, relying on documents she included with the motion, that she had been evaluated in 2020 and found to be disabled.  She was unable to work in any capacity.  Review of her disability occurred every five to seven years.

Sanderson attached documentation she purported to have obtained from the SSA.  One document was from the SSI home page, 2021 Edition.  It addressed who was eligible for SSI and how to apply for benefits.  The document provided, "Social Security periodically reviews you medical impairment(s) to determine if you continue to have a disabling condition.  If we determine that you are no longer disabled or blind, your benefits will stop.  [¶]  We call this review a Continuing Disability Review (CDR).  The law requires us to perform a medical CDR at least once every three years, however, if you have a medical condition that it not expected to improve, we will still review your case, once every five to seven years."  The family court denied the motion to set aside the temporary order.

A second hearing was held on October 12, 2023.  DCSS, Millard's counsel, and Sanderson were present.  Sanderson did not provide any additional documentation of her disability or limitations to the family court.  She stated, "I did turn in paperwork showing that SSA does a re-evaluation between five and seven years, and it is not my choice as to

when that re-evaluation is. Therefore, my SSI paperwork that was turned in is still valid as it was an award letter." The family court inquired whether she was collecting disability payments. She stated, "The amount is $0, but because it is an award letter stating that I am disabled, it is still valid. It does still qualify." She admitted she provided no new documentation, but insisted that the 2020 information that she was disabled was still valid.

The family court noted that when it imposed the $925 child support payment at the prior hearing, it had appeared that Millard was not working. Based on the updated income and expense declaration, it appeared that Millard had started working in July 2023. The family court intended to modify the amount of support to be paid by Sanderson to $664. The family court found that the evidence of Sanderson's disability was "stale."

Sanderson insisted her income should be set at zero and she should owe no child support. Millard's counsel noted that on Sanderson's income and expense declaration, she listed her household as herself, her husband and two stepchildren. Their monthly expenses totaled $5,000, but the household income was $3,000. Millard's counsel had asked Sanderson how she came up with the $2,000 and Sanderson refused to disclose the information to counsel. Sanderson advised the family court that she did not have the extra $2,000 each month and that she was behind on her bills.

DCSS responded that Sanderson was not receiving any money from SSI. She may have other income. Further, SSI was not permanent, and it was the understanding of DCSS that it was reevaluated every three years except under certain circumstances. The

7

family court inquired of Sanderson if she had provided evidence that she qualified for the five to seven year reevaluation. Sanderson responded that the letter she received in 2020 did not state when she would be reevaluated.

The family court inquired, "So if you keep representing that you are not going to be re-evaluated for five to seven years, how do you know that?" Sanderson responded, "When I went to the SSA.gov site, to find out what—how they—when they did re-determination, it stated five to seven years." The family court stated DCSS represented that a reevaluation was every three years and asked how Sanderson knew she was not in that category. Sanderson responded, "I have not gotten any information from SSI." She insisted that she had contacted SSI and asked for updated information on her disability and they claimed they could not provide further information.

The family court found that no new information was presented that required it to reverse the finding of Sanderson's income at the previous hearing. It ordered that Sanderson pay Millard $664 in monthly child support commencing on July 1, 2023. DCSS stated it would prepare an order after hearing and it would be sent to Sanderson.

The family court signed the order after hearing on January 5, 2024 (permanent order). Attached was the computer printout of the parents' income and the percentage of time each parent spent with the children. Sanderson was ordered to pay $664 in child support payments each month to Millard commencing July 1, 2023. The printout provided that Sanderson's net disposable income was $3,201. With the payment of support, she would have an income of $2,537. The three children spent 71 percent of their time with Millard. There was no SSI income listed for Sanderson.

On October 27, 2023, Sanderson filed a request for a statement of decision relying on Code of Civil Procedure section 632 and California Rules of Court 3.1590, subdivision (d). Sanderson sought a statement of decision from the family court explaining what evidence or exhibits were admitted at the hearing that were considered in deciding there was a need for modification of the 2022 child support order; what changes the family court considered were made by Sanderson; what factors the family court used to determine that her income had changed or she was no longer disabled; and what evidence was presented to dispute the SSI Award Letter. According to the Register of Actions, the request for a statement of decision was denied on November 16, 2023.

On March 13, 2024, Sanderson brought a motion to set aside the permanent order. In her declaration in support of the motion, she stated that she was not provided a copy of the order after hearing from DCSS until March 12, 2024. She received no entry of judgment. She insisted that she had advised DCSS that she objected to part of the permanent order, which did not match the minute orders, but it was not corrected or addressed. She also insisted that Millard's counsel had made an unauthorized change to the permanent order before it was sent to the family court to sign. She sought to have the permanent order set aside and that sanctions be imposed against DCSS and Millard's counsel for their actions.

A minute order from April 29, 2024, is included in the clerk's transcript. On that day, a hearing was held on Sanderson's motion to set aside the permanent order. The motion to set aside was denied. On May 1, 2024, Sanderson filed her notice of appeal from the January 5, 2024, permanent order.

9

## DISCUSSION

Sanderson claims the family court abused its discretion in finding there was a lack of evidence of her disability and inability to work. She insists the family court improperly imputed full-time minimum wage income to calculate the child support order. She makes a similar claim in Argument III, that the family court's decision was not supported by the facts and it erroneously determined she had the capacity to seek and hold full-time minimum wage employment.

"Parents have the obligation to support their minor children. Even when, after a child support order is made, the income of the parents changes, that obligation continues." (*Mendoza v. Ramos* (2010) 182 Cal.App.4th 680, 684-685 (*Mendoza*).)

Here, the family court was reviewing DCSS's claim that there should be a modification to the existing child support orders. Family Code section 3651,[5] subdivision (a), provides, in relevant part, that "a support order may be modified or terminated at any time as the court determines to be necessary." Sanderson does not raise a claim on appeal that there were no grounds to modify child support, but rather that the family court abused its discretion in imputing income to her despite no facts being offered to support her ability or opportunity to work, and her showing that she was disabled and unable to work.

---

[5] All further statutory references are to the Family Code unless otherwise indicated.

10

Pursuant to section 4052, in determining child support, "The court shall adhere to the statewide uniform guideline and may depart from the guideline only in the special circumstances set forth in this article." Pursuant to section 4052.5, subdivision (a), "The statewide uniform guideline, as required by federal regulations, shall apply in any case in which a child has more than two parents. The court shall apply the guideline by dividing child support obligations among the parents based on income and amount of time spent with the child by each parent, pursuant to Section 4053." Section 4053 sets forth the principles to be followed by the family court in implementing the statewide uniform guideline. Subdivision (a), of section 4053 provides, "A parent's first and principal obligation is to support the parent's minor children according to the parent's circumstances and station in life." In addition, both parents are mutually responsible for the support of the children. The guideline takes into account each parent's actual income and the amount of responsibility for the children. (§ 4053, subds. (b), (c).)

"[A] court may properly consider not only actual income, but earning capacity where a parent becomes unemployed or underemployed, provided doing so is consistent with the best interests of the children." (*Mendoza*, *supra*, 182 Cal.App.4th at pp. 684–685; see also § 4058, subd. (b)(1)(A) ["In a case when a parent's annual gross income is unknown, the court shall consider the earning capacity of the parent"].)[6] "To rely on

---

**6** "Effective September 1, 2024, the statute [§ 4058, subd. (b)(1)(A)] states the court 'shall consider the earning capacity of the parent' 'when a parent's annual gross income is unknown.' " (*Mercado v. Superior Court* (2024) 106 Cal.App.5th 1143, 1155-1156.) In *Mercado*, as here, "At the time of the trial court's orders, section 4058 did not distinguish between 'known' versus 'unknown' annual gross income. In all

*[footnote continued on next page]*

11

earning capacity in lieu of actual income, '[t]he dispositive question is whether the evidence will sustain the inference that the party charged with support could, with reasonable effort, obtain employment generating the postulated . . . income.' " (*In re Marriage of Cohn* (1998) 65 Cal.App.4th 923, 930.)

### A.    SANDERSON'S EVIDENCE OF INABILITY TO WORK

Sanderson contends in Argument I that the family court abused its discretion by rejecting her evidence that she was considered disabled by the SSA and was unable to work.

A "fundamental principle of appellate procedure [is] that a trial court judgment is ordinarily presumed to be correct and the burden is on an appellant to demonstrate, on the basis of the record presented to the appellate court, that the trial court committed an error that justifies reversal of the judgment. [Citations.] 'This is not only a general principle of appellate practice but an ingredient of the constitutional doctrine of reversible error.' [Citation.] 'In the absence of a contrary showing in the record, all presumptions in favor of the trial court's action will be made by the appellate court." (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608-609.)  " 'Consequently, [the appellant] has the burden of providing an adequate record. [Citation.] Failure to provide an adequate record on an issue requires that the issue be resolved against [the appellant].' " (*Id.* at p. 609; see also *Ballard v.*

---

circumstances, it provided:  'The court may, in its discretion, consider the earning capacity of a parent in lieu of the parent's income, consistent with the best interests of the children, taking into consideration the overall welfare and developmental needs of the children, and the time that parent spends with the children.' " (*Id.* at p. 1156.)  Here, the family court imputed income based on earning capacity.

*Uribe* (1986) 41 Cal.3d 564, 574. ["[A] party challenging a judgment has the burden of showing reversible error by an adequate record"].)

Here, Sanderson repeatedly contends that the SSI Award Letter showed that she had been disabled since 2014, that it was accepted by the court in 2022 in setting child support, and it was effective as of 2020. She claims the family court had "undisputed information" from the letter itself that she was disabled as of the time that DCSS asked for modification of child support and that her disability was not expected to expire within any time frame. She also concludes that in 2022, the SSI Award Letter satisfied the conditions to show she had a permanent disability, resulting in her not being ordered to pay child support; her disability was only reviewed by the SSA every five to seven years. However, the SSI Award Letter is not included in the record on appeal. While the parties agree that it was issued in 2020, there is no stipulation between the parties as to the wording of the letter. In fact, the family court stated in court that "I don't see anything in this letter saying that you're forever disabled or that you are currently disabled." Moreover, the records of what occurred in 2022 regarding the findings on child support are not included in the record in this appeal and cannot be relied upon by Sanderson to show that she was found disabled at that time based on the SSI Award Letter, and could not work. This court must accept that the family court properly interpreted the SSI Award Letter to conclude that it was not evidence that Sanderson was disabled at the time of the request by DCSS to modify child support. As such, the family court had the discretion to impute income to Sanderson.

13

Sanderson also relies on her evidence that she presented from the SSA that reevaluations took place every five to seven years. She insists she had a permanent disability, which qualified for reevaluation every five to seven years. However, there is no evidence in the record as to the type of disability that Sanderson was suffering from, if that disability was permanent, or the extent of her limitations. As stated, the SSI Award Letter is not part of the record. Sanderson cannot rely on the language of the letter to support her claim on appeal that it provided she was permanently disabled, and that the trial court erred by finding she was able to work. As such, the trial court reasonably could determine that Sanderson had failed to show a disability that limited her ability to work.

Nonetheless, since this court finds, *post*, that the family court's finding imputing income to Sanderson is not supported by substantial evidence, and we remand for a new hearing on child support, it is reasonable for Sanderson to be able to again address, on remand, that she is unable to work due to her disability.

B.      BURDEN OF PROOF FOR EARNING CAPACITY

In Argument III, we find that Sanderson has sufficiently raised the claim that there was not substantial evidence to support the trial court's finding regarding her earning capacity.[7] She insists the trial court "did not have any evidence" of her ability or the opportunity to work.

---

[7] Sanderson has not provided an extensive argument or legal authority on this issue. However, DCSS does not contend that her argument on appeal is insufficient and has responded to this claim at length, insisting the trial court's determination on imputed income was supported by substantial evidence.

14

" ' "Earning capacity is composed of (1) the ability to work, including such factors as age, occupation, skills, education, health, background, work experience and qualifications; (2) the willingness to work exemplified through good faith efforts, due diligence and meaningful attempts to secure employment; and (3) an opportunity to work which means an employer who is willing to hire." ' [Citation.] If a parent is unwilling to work despite the ability and the opportunity, earning capacity may be imputed." (*In re Marriage of LaBass & Munsee* (1997) 56 Cal.App.4th 1331, 1337-1338 (*LaBass*).)

The moving party seeking to have income imputed bears the burden of demonstrating the other party's "ability and opportunity to earn that imputed income." (*In re Marriage of Bardzik* (2008) 165 Cal.App.4th 1291, 1294.) "[I]ncome cannot be imputed based upon a party's earning 'capacity' absent proof of *both* ability and opportunity to earn the income on a going-forward basis." (*In re Marriage of Berger* (2009) 170 Cal.App.4th 1070, 1079.) The party must present "competent evidence" that the other party had both an ability and an opportunity to earn the attributed income sought to be imputed to the party. (*In re Marriage of Wittgrove* (2004) 120 Cal.App.4th 1317, 1329; see also *Mendoza*, *supra*, 182 Cal.App.4th at pp. 685-686 ["It is not sufficient to demonstrate only what the party had been making before the loss of income; the moving party must also adduce evidence of vocational abilities and employment opportunities"].) "[F]igures for earning capacity cannot be drawn from thin air; they must have some tangible evidentiary foundation." (*In re Marriage of Cohn, supra*, 65 Cal.App.4th at p. 931.)

"We review an order establishing or modifying child support based upon earning capacity for an abuse of discretion. [Citations.] '[W]e consider only "whether the court's factual determinations are supported by substantial evidence and whether the court acted reasonably in exercising its discretion." [Citation.]. . . "[W]e do not substitute our own judgment for that of the trial court, but determine only if any judge reasonably could have made such an order." ' " (*In re Marriage of McHugh* (2014) 231 Cal.App.4th 1238, 1247 (*McHugh*); see also *In re Marriage of Berger* (2009) 170 Cal.App.4th 1070, 1079.)

There was no substantial evidence to support the family court's finding regarding Sanderson's earning capacity. While we assume the family court properly found that Sanderson was no longer considered disabled, as stated *ante*, there was no evidence presented by DCSS, or even Millard's attorney, as to Sanderson's ability and opportunity to find a full-time job making minimum wage. The family court never considered Sanderson's skills, and there was no evidence presented about the local job market. The family court "took judicial notice" of the fact that there were "multiple minimum wage jobs in our current job market," including work-from-home jobs and jobs that could accommodate reasonable "requests for accommodation." There is nothing in the record to support how the family court obtained this information. Sanderson's own income was zero at the time DCSS sought to have the child support amount modified, so there was no evidence of what she could potentially earn. There was also no evidence of prior jobs or even what type of skills Sanderson possessed to be able to obtain a job. While we can surmise that a person who graduates from high school could obtain a minimum wage job, the burden was on DCSS to present "competent evidence" that Sanderson had both an

16

ability and an opportunity to earn the attributed income sought to be imputed to her. (*In re Marriage of Wittgrove*, *supra*, 120 Cal.App.4th at p. 1329.)

DCSS recognizes that the family court can rely on "opinion testimony" to find that "someone with the party's credentials could secure employment." It also recognizes that in reviewing the family court's factual determinations, this court considers whether they are supported by substantial evidence. DCSS insists that relying on the income and expense declaration, the family court correctly concluded that she had completed high school, had some college, and there "were multiple minimum-wage jobs available that could allow for accommodations or work from home." However, DCSS points to no evidence presented to support that there were multiple minimum-wage jobs available, Sanderson's qualifications, or the specifics of the accommodations.

DCSS also claims, relying on *LaBass*, *supra*, 56 Cal.App.4th at p. 1339, and *McHugh*, *supra*, 231 Cal.App.4th at p. 1251, that "The party urging use of the earning capacity standard has no burden to convince the court that the other party has the ability and opportunity to work, rather, the burden is on the party resisting imputed employment income to demonstrate that they lack the ability to find employment." This conclusion is not supported by the cited cases and, in fact, holds that the initial burden of showing the ability and opportunity to earn such income is with the person who seeks to have another party imputed with income.

In *McHugh*, *supra*, 231 Cal.App.4th 1238, the court noted that "the parent seeking to impute income to the other parent need only show the other parent had the ability to perform the job earning the income to be imputed and the job was available. The parent

17

to whom the income would be imputed bears the burden to show he or she could not secure the job despite reasonable efforts." (*Id.* at p. 1251.)  In that case, which involved a mother seeking to have income imputed to the father, who had lost his job, the court found that the mother needed to show that the father had the ability to perform the job, and the job was available.  Extensive evidence was presented regarding the history of the father's job and his ability to obtain the job.  (*Id.* at pp. 1244-1245.)  Such evidence of Sanderson's qualifications and the availability of jobs matching her qualifications was lacking in this case.

In *LaBass, supra,* 56 Cal.App.4th 1331, a father sought to modify an existing child support order by imputing a full-time teacher's salary to the mother despite her currently only working as a part-time teacher.  The father presented evidence that the mother had a teaching credential, the local school district had multiple openings for full-time teachers, which met the mother's experience and provided the salary for a full-time teacher with the mother's level of education and experience.  The evidence presented to the court was the mother's degree, help wanted ads soliciting candidates for teaching positions, and pay scales from the school district.  (*Id.* at pp. 1335-1336, 1338.)  The trial court imputed the full-time teaching salary to the mother, and she appealed, arguing that there was no guarantee that she would secure the job.  The appellate court initially made clear that there was an initial burden on the moving party to present evidence of the ability and opportunity to earn the imputed income.  (*Id.* at p. 1339.)  The appellate court rejected the mother's argument regarding securing a job, finding that the father "bore no burden to convince the court that [the mother] would have secured a full-time job had she applied.

18

Rather, it was incumbent upon [the mother] to show that, despite reasonable efforts, she could not secure employment despite her qualifications." (*Id*. at p. 1339, italics omitted.) *LaBass* did not hold, as stated by DCSS, that the party to whom income should be imputed had the burden of proving first that he or she is unable to work. Rather, as stated, the initial burden is on the party seeking to impute income to provide evidence of the ability and opportunity to make the imputed income.

Here, it was DCSS seeking to modify the child support. It argued Sanderson was no longer disabled and should be imputed income. However, DCSS never met its initial burden of presenting evidence that Sanderson had the ability and opportunity to earn that imputed income. The family court never considered Sanderson's qualifications, nor was it presented with any evidence of the current job market related to her qualifications. The family court's order imputing full-time minimum wage income to Sanderson is not supported by substantial evidence.

Since we reverse the family's court order, and direct that a new hearing be conducted on the modification of child support, we need not address Sanderson's additional claims that the family court applied the wrong legal standard, was biased against her, and failed to issue a statement of decision, as we presume the family court will conduct the new hearing in conformance with this opinion.

## DISPOSITION

The permanent order entered January 5, 2024, is reversed. The matter is remanded to the superior court with directions to reconsider the request by DCSS regarding

19

modification of child support consistent with this opinion.  The parties are to bear their own costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER _____

Acting P. J.

We concur:

CODRINGTON _____

J.

FIELDS _____

J.