[No. D008608. Fourth Dist., Div. One. Jan. 26, 1990.]

In re the Marriage of JANE A. and VON D. KIRK.
VON D. KIRK, Respondent, v.
JANE A. KIRK, Appellant.

**COUNSEL**

Kolodny & Pressman, Wesley W. Lee and Russell E. Griffith for Appellant.

Phillips, Campbell, Haskett & Noone and Barton M. Noone for Respondent.

**OPINION**

**FROEHLICH, J.**—The superior court, on a motion to modify support obligations, terminated Von D. Kirk's obligation to pay spousal support to his former wife, Jane A. Kirk, and reduced his obligation to pay child support to $1,200 per month. The court determined not to consider as part of Von's gross income $4,450 per month which he received in the form of a reduction of debt owed to his employer. Jane appeals, seeking review of the court's decision not to consider the debt reduction in calculating Von's support obligations.

### FACTUAL AND PROCEDURAL BACKGROUND

Jane Kirk (hereafter Jane) and Von Kirk were married in 1970. They separated in 1982; dissolution proceedings were begun in May 1982; and an interlocutory judgment of dissolution was entered on June 20, 1983. The marriage produced four children, whose legal custody is shared by Von and Jane, with sole physical custody in Jane.

At the time of the filing for dissolution Von was principal owner and controlling shareholder of KTK, Inc., which operated Kirk Volvo, an automobile dealership. Following separation he caused large sums to be advanced to himself which were treated as a loan from the corporation. At the time of the review hearing in 1988, Von owed KTK $572,000. None of this money benefited Jane or the children, the unchallenged representation to the court being that it was used for vacations and other personal pleasures by Von.

Von subsequently entered into an employment agreement with the new owners of the corporation which contemplated repayment of this debt. The mechanism provided by the agreement was the payment to Von of an annual bonus of the greater of $53,400 or 5 percent of KTK's net profits for the preceding fiscal year. The monthly allocation of this sum, or $4,450 per month, was to be paid Von and automatically utilized to reduce his

indebtedness to the corporation. This payment was in addition to Von's regular salary of $5,000 per month.

Von's modification request was based on the fact that he was no longer the principal owner and controlling shareholder of the automobile dealership, but now worked under an employment contract providing a gross salary of $5,000 per month and debt cancellation of $4,450 per month. He argued the debt forgiveness should not be calculated as income for the purpose of determining his liability for child support since that amount was not available for his personal living expenses or for child support.

The superior court agreed and ordered that Von's obligation to pay spousal support be terminated and his monthly child support obligation reduced to $300 per child, a total of $1,200 per month. The court based its order on a finding that Von had a current monthly net income of $3,500 and Jane had a current monthly net income of $4,848. Jane's motion for reconsideration was denied, the court reaffirming that it would not consider the debt forgiveness in calculating Von's support obligation.[1]

## DISCUSSION

The sole issue on appeal is whether, as Jane contends, the trial court erred in not considering as income the $4,450 Von received as a monthly debt reduction in calculating his child support obligations. We reject Jane's contention that the case is controlled by the formula for determining minimum child support contained in the Agnos Child Support Standards Act of 1984 (Agnos Act), but reverse because we find the court's refusal to consider the debt reduction payments as income was, in light of the record and findings of the court, an abuse of discretion.

### 1. *Applicability of Agnos Act*

Jane relies heavily upon the terms of the Agnos Act. (Civ. Code,[2] § 4720 et seq.) Jane's contentions are twofold: (1) that the $4,450 monthly debt cancellation was "income" under section 4721, subdivision (a) of the act, and (2) that this income cannot be excluded from the child support formula of the act because it is not one of the deductions specified in section 4721, subdivision (c). Jane is correct in each of these contentions. The definition of income of section 4721 is very broad, clearly

---

[1] The employment agreement characterizes the transaction as a payment to Von "the purpose of which is to enable Employee to satisfy his outstanding indebtedness to Employer . . . ." Counsel for Von represented to the court that the actual transaction involved no payment at all, but simply a monthly reduction of debt.

[2] All statutory references are to the Civil Code unless otherwise specified.

inclusive of debt cancellation income.[3] The deduction provisions are, however, very specific and narrow, not permitting a reduction in the calculation for payment of antecedent debt.[4] We reject Jane's contention that the Agnos Act formula is controlling because we conclude it was intended to preclude judicial discretion to consider non-Agnos Act factors only when the court is determining the amount of the "mandatory minimum child support award." (§ 4721.)

The basic statutory provisions governing the setting and modification of child support are set forth in sections 4700 and 4700.1. Section 4700, which provides authority for initial orders, speaks in generalities in referring to the factors which may be taken into consideration in setting child support. Section 4700, subdivision (a)(1) refers to the court's making findings "with respect to the circumstances on which the order for the support of the minor child is based." Section 4700, subdivision (a)(2) states that the judgment may be "based on all relevant facts," and the term "relevant facts" is stated to have the meaning given in subdivision (d) of section 7010. Section 7010 (a part of the Uniform Parentage Act) provides in subdivision (d) that in determining the amount to be paid for child support "relevant facts" will include four stated factors, but the fifth factor is "[a]ny other factors

---

[3] Section 4721 defines gross income as "income from whatever source derived" and then contains a long list of examples which embrace all kinds of receipts. Jane contends that since the phrase "income from whatever source derived" is the same as the terminology of Internal Revenue Code section 61, subdivision (a), precedent from federal tax sources is applicable to construction of the Agnos Act. While we agree that cancellation of debt income falls within the broad definition of the Agnos Act, and hence is income both for that purpose and for Internal Revenue purposes, we must reject the notion that income for tax purposes is the same as income under the Agnos Act. Section 4721, subdivision (a)(1), for instance, classifies as income all pensions, interest, trust income, annuities, workers' compensation benefits, unemployment benefits and disability benefits. All these categories of receipts are excluded from income, either in whole or in part, under the Internal Revenue Code. (See Int.Rev. Code, §§ 103 [interest on state or municipal obligations not included], 641 et seq. [distributions from trusts may or may not be income], 72 [distributions from an annuity are usually part income and part return of capital], 104 [distributions classifiable as employee benefits, such as workers' compensation, unemployment insurance, etc., generally are not includable as income].)

[4] The Agnos Act formula for computing "net disposable income," as contained in section 4721, subdivision (c), permits a reduction of "gross income" by the use of only very specific categories of expenditures. They are: state and federal income taxes; Federal Insurance Contributions Act (FICA) contributions; mandatory union dues and retirement benefits provided they are a condition of employment; health insurance and state disability insurance premiums; and child support payments actually being made. (§ 4721, subd. (c)(1) through (5).) "Additional income deductions," as described in section 4725, may be made for the benefit only of a parent "experiencing extreme financial hardship due to justifiable expenses," such hardship resulting from, among other things, extraordinary health expense or support obligations for other children. (§ 4725, subd. (a), (b).) If such special deductions are allowed, the court must state on the record the reasons for same and cite the documentation of the underlying facts and circumstances. (§ 4725, subd. (c).) This court has very recently affirmed that the categories of deductions from gross income are specific and should be narrowly construed. (See *County of San Diego* v. *Sierra, ante,* p. 126 [265 Cal.Rptr. 749].)

deemed relevant by the court." ■ It appears, therefore, that section 4700 contemplates broad discretion by the trial court in selecting and weighing "factors" and "circumstances" of the parties, and this accords with traditional decisional authority. (See, e.g., *In re Marriage of Aylesworth* (1980) 106 Cal.App.3d 869, 876 [165 Cal.Rptr. 389]; *Primm* v. *Primm* (1956) 46 Cal.2d 690, 694 [299 P.2d 231].)

The provisions of section 4700.1 also indicate a legislative intent to vest broad discretion in the trial court in terms of the factors to be considered in determining income and expenses of a supporting parent. A parent seeking a reduction in child support because of a "significant decrease in income" shall present "evidence of his or her decline in economic circumstances." (§ 4700.1(d).) Resort by the trial court may be made to "guidelines in use within [the] jurisdiction," and if such resort is made the modification must be based on those guidelines. (*Ibid.*) The guidelines in use in San Diego (San Diego Super. Ct. Rules, rule 3.7 et seq.) contain rules for determining net income which appear to permit the exercise of judgment and discretion individual to the factors of each case. For instance, voluntary retirement payments or savings plans will "normally" not be considered an appropriate deduction. (*Id.*, rule 3.7(b)(2)(d).) Mandatory retirement deductions which are in excess of the FICA amount (presumably contractual provisions of employment which require participation in a pension plan) are to be allowed or disallowed as a deduction in the discretion of the court. (*Ibid.*) A job-related expense may or may not be allowed as a deduction, the court in the exercise of its discretion to consider the necessity therefore and any benefit to the employee, as well as "any other relevant facts." (*Id.*, rule 3.7(b)(2)(e).) After reciting several additional factors which call into effect the exercise of judicial discretion, the rule concludes by provision that the court shall take into consideration "[o]ther extraordinary expenses or circumstances as the court may feel just and proper." (*Id.*, rule 3.7(c)(2)(c).)

Legislative findings contained in the preamble to the Agnos Act (§ 4720) discuss generally the failure of achievement in California of a single standard to promote equitable and adequate child support awards, which failure has resulted in substantial variation in the awards made to families in similar circumstances. Section 4720, subdivision (e) states: "It is the intention of the Legislature that the courts shall adhere to the principles set forth in this chapter and shall depart from them only in exceptional circumstances." The standards set forth in the act are intended to establish "a system of standards and procedures . . . which provide for a uniform determination of child support awards throughout the state . . . ." (§ 4720, subd. (d).)

■ A review of the four corners of the act, however, convinces that it was not intended to restrict the discretion otherwise vested by sections 4700

and 4700.1 *except* insofar as applicable to the setting of the minimum award. The act references the level of support required by the aid to families with dependent children program (AFDC), and states that it is the purpose of the act to assure that, assuming the financial ability of the parent, "no child receives a support award less than would otherwise be established as the need for that child under the AFDC program." (§ 4720, subd. (d).) Section 4721 specifies that its formula of income and deductions is to be used in determining "the ability of parents to pay the mandatory minimum child support award." Section 4722 tracks in detail the mathematics by which the court is to calculate minimum awards, so that such awards will under ordinary circumstances not be lower than the AFDC standard.

Section 4720, subdivision (e), recognized the potential of a parent's having sufficient disposable income to pay more than the mandatory minimum child support provided by the act, and states in this regard that the parent's "circumstances and station in life are dependent upon a variety of factors, including his or her earned and unearned income; earning capacity; assets; and the income of his or her subsequent spouse or nonmarital partner. . . ." Thus, where more than the mandatory minimum is to be ordered, the act clearly provides for consideration of factors other than those provided in section 4721. In section 4723 the Legislature states that the minimum award established by the act is to cover basic living expenses, that "other costs related to the rearing of children," such as special educational expenses, should be provided by an award of support in excess of the minimum, and that this determination may be made "pursuant to the discretionary guidelines in use in the county."

In both sections 4723 and 4724 the use of "guidelines" is permitted only if they are "not in conflict with the mandatory minimum award established by this chapter." (§ 4724(a).) This prohibition, literally, permits use of the guidelines and, inferentially, other exercise of discretion, when an award is set which exceeds the "minimum award." ██ ██ ██ ██ While certain of the language in the preamble of the act might suggest otherwise, we believe the adoption of the strict formula for calculating child support was not intended to replace discretionary factors otherwise available under sections 4700 and 4700.1, once the mandatory minimum has been achieved.[5] As is evident from references contained in the Agnos Act itself,

---

[5] In our analysis we follow accepted rules for statutory construction, including the overriding objective of adherence to the intention of the Legislature (Code Civ. Proc., § 1859) and recognition of the principle that legislative intent is best determined by the language of the statute. (*Plumbing etc. Employers Council* v. *Quillin* (1976) 64 Cal.App.3d 215, 224 [134 Cal.Rptr. 332].) In construing the Agnos Act it is necessary to harmonize its provisions with preexisting and companion provisions of the system of laws of which it is a part (*Morrison v. Unemployment Ins. Appeals Bd.* (1976) 65 Cal.App.3d 245, 250 [134 Cal.Rptr. 916]), in this case being generally the Family Law Act, and more specifically Civil Code sections 4700 and 4700.1.

the use by superior courts of support "guidelines" was well established by 1984, the date of the act's adoption. Support guidelines were first adopted on an informal basis in Marin County in the early 1970s. A uniform schedule was adopted in 1977 for most of the counties in the San Francisco Bay area. A schedule subsequently devised for Santa Clara County became widely used in other counties and, in fact, is the basis for the guidelines adopted for San Diego County. The legislative staff working on the Agnos Act from 1982 through 1984 was well aware of the existence of the several guidelines, and the Legislature approved the continued use of such guidelines by referring to same in the statute, and by requiring (in § 4724, subd. (b)) that the Judicial Council adopt child support guidelines to be utilized in counties without their own guidelines.[6] The Legislature could not have intended, in light of its recognition of the use of "guidelines," that the new act supplant existing authority derived from sections 4700 and 4700.1 for the use of the guidelines and the discretion reflected therein.

Returning to the Kirks' case, under any measure, the child support actually provided by the court's ruling was above the minimum required by the Agnos Act.[7] The income and expense factors permissible for consideration by the trial judge were, therefore, not limited to those specified in section 4721, but included the generalized and discretionary factors permissible under sections 4700, 4700.1, and the county's guidelines. We therefore reject appellant's contention that the court erred in excluding the cancellation of debt income from its calculation of available funds for child support because such factor was not included in the Agnos Act formula. Since child support well in excess of the minimum standards prescribed by the Agnos Act was ordered, we find that the court was not restricted to the factors prescribed by that act, but was free, in accordance with sections 4700, 4700.1, and the county guidelines, to take into consideration all relevant facts and circumstances. This determination does not, however, resolve the matter.

---

[6] This judicial and legislative history is taken from Norton, Explaining and Comparing the California Child and Spousal Support Schedules (1987) 4 California Family Law Monthly No. 1, which was subsequently reprinted in CJER California Superior Court Institute: Family Law and Procedure, March 17-19, 1988 Institute, tab 4, pages 11-30. That the Legislature intended restriction of the guidelines only as necessary to prevent orders *below* the minimum is supported, inferentially, by the statement in California Family Law Service (Bancroft-Whitney Co. 1986) section 43.18, page 473, "[t]hat the court [may] use county guidelines so long as no award is less than the mandatory minimum established by the Act."

[7] Under Civil Code section 4722 the minimum child support for Von and Jane's four children is computed by comparing 40 percent of Von and Jane's combined disposable incomes with the AFDC amount for four children. The Agnos minimum award for child support is the lesser of the two amounts. The AFDC amount appears to have been $625 at the time Von's child support obligation was modified. Since 40 percent of Von and Jane's disposable incomes (even without considering Von's monthly debt forgiveness) is well above $625, *the minimum award is $625.* (§ 4722, subd. (a)(3).)

## 2. *Abuse of Discretion*

■ Acknowledging that the trial court was not bound by the Agnos factors, and that it was free to review and consider the effect of Von's unusual debt cancellation contract, we remain obliged to review the court's action to determine whether it constituted an acceptable exercise of trial court discretion. ■ The establishing of child support, *sans* the strictures of the Agnos Act, is a matter left to the sound discretion of the trial court. The exercise of this discretion will not be disturbed by an appellate court unless an abuse of discretion is shown. The appellate court should not substitute its own judgment for that of the trial court, and its review is limited to the discovery of substantial evidence in support of the trial court's decision. The trial court's decision must be upheld if the judge on any grounds supported by the evidence reasonably could have made the order. (*Primm* v. *Primm, supra,* 46 Cal.2d at p. 694; *Armstrong* v. *Armstrong* (1976) 15 Cal.3d 942, 947 [126 Cal.Rptr. 805, 544 P.2d 941]; *In re Marriage of Aylesworth, supra,* 106 Cal.App.3d at p. 876; *White* v. *Marciano* (1987) 190 Cal.App.3d 1026, 1033 [235 Cal.Rptr. 779].)

■ We are here faced with a contractual shift of disposable income from child support to the payment of third party debt. On its face, this is not permissible. "A parent's first and principal obligation is to support his or her minor children . . . ." (§ 4720, subd. (e).) "All payments of support shall be made by the person owing the support payment prior to the payment of any debts owing to creditors." (§ 4700, subd. (a)(1).) "[A]n indebted parent cannot escape liability for the paramount obligation to support the parent's children because of indebtedness such parent has created." (*In re Marriage of Muldrow* (1976) 61 Cal.App.3d 327, 333 [132 Cal.Rptr. 48].)

The record in this case discloses a contractual obligation to shift $4,450 per month, from total gross income of $9,450 per month, from funds available for child support to the repayment of debt. There is nothing to suggest that this obligation was sham, unenforceable or undertaken as a ruse to avoid child support. It is also undeniable, however, that this spare record impels the conclusion that the contract was voluntarily entered into by Von in the face of a preexisting child support obligation which the new contract was bound to undermine. It is our opinion that the facts presented to the trial court judge allow (and it appears that he may have found) only the following conclusions: (1) Von had an earning capacity, and was worth in compensation, some $9,450 per month; (2) he entered into an employment contract providing for this compensation; (3) he volitionally included in the contract an automatic shift of $4,450 of this income to a payment of debt, which debt although antecedent the contract was post the existing child

support award; (4) this volitional shift of cash then made impossible the continuance of the award.

■ We are mindful of the general principle that support awards must ordinarily be made upon actual earnings rather than earning potential, and that earning potential can be considered only when the supporting parent is shown voluntarily to have lowered earnings with a view to undermining his ability to support. (See *In re Marriage of Sinks* (1988) 204 Cal.App.3d 586, 592-593 [251 Cal.Rptr. 379]; *In re Marriage of Williams* (1984) 155 Cal.App.3d 57, 59 [202 Cal.Rptr. 10]; *In re Marriage of Barnert* (1978) 85 Cal.App.3d 413, 427 [149 Cal.Rptr. 616]; *Philbin* v. *Philbin* (1971) 19 Cal.App.3d 115, 121 [96 Cal.Rptr. 408].) That circumstance is not presented in this case. ■ What is presented is a strikingly clear case of contractual shift of income from the control of the earning parent by an automatic payment of it to a creditor. The trial court was correct in its conclusion that under the terms of Von's employment contract the monthly sum of $4,450 simply was not available to him for use in the payment of child support. The error of the court was in failing to consider that the only rational inference derivable from the paperwork before the court was that this shift was a voluntary diversion of income to pay debt, resulting in deprivation of funds for child support. The law does not permit this. Were we to sanction this sort of transaction we can envision all manner of special contracts, with employers or others who owe money to a supporting parent, which shift funds from available income to utilization for other purposes benefiting the parent (such as savings plans, retirement plans, miscellaneous fringe benefits), resulting in the contention that the support order must be reduced. We therefore conclude that the court's order must be reversed and the matter remanded for further consideration.

One might speculate that Von's worth at the time of his employment contract was not $9,450, but only $5,000. It is possible that he was engaged at the $9,450 figure only to permit the creation of a paper deduction of $4,450 per month which would benefit the employer in its tax computations. It is conceivable that Von had no choice in the matter, that if he had declined to enter into the special bonus provision he would not have been employed, and hence that the shift of income was in fact not "voluntary" with Von, as we have presumed above. Von's counsel argued as much to the trial court. There was, however, no substantial *evidence* before the court to support this conclusion, and as a matter of fact the trial court did not enunciate that conclusion. On rehearing, the trial court will be entitled to consider additional evidence bearing upon the true nature of Von's employment agreement. Absent specific findings, supported by concrete evidence, which undergird conclusions in accord with our "speculation," we are unwilling to sanction a reduction in Von's support order. The face of this

record shows a voluntary diversion of income for the purpose of repaying debt. A reduction of child support on that ground is, in our opinion, an abuse of discretion.

## DISPOSITION

The order modifying the support order is reversed and the case remanded to the trial court for reconsideration in accordance with the principles expressed herein.

Wiener, Acting P. J., and Benke, J., concurred.