Filed 6/25/13  Marriage of Meyer CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re the Marriage of MARTIE and SCOTT MEYER. | D060089 |
| MARTIE MEYER, | |
| Respondent, | (Super. Ct. No. D481420) |
| v. | |
| SCOTT MEYER, | |
| Appellant. | |

APPEAL from orders of the Superior Court of San Diego County, Robert C. Longstreth, Judge.  Affirmed in part, reversed in part.

Scott Meyer, in pro. per., for Appellant.

Melissa J. Schmitt for Respondent.

Scott Meyer appeals the trial court's order of June 1, 2011 requiring him to pay his former wife Martie Meyer $5,000 in attorney fees pursuant to Family Code[1] section 2030

---

1    All statutory references are to the Family Code.

(attorney fees order).[2] Scott also appeals a June 24, 2011 order increasing his child support obligation (child support order) from $2,000 to $4,132.

As we explain, we agree with Scott's contention that the court erred in awarding Martie attorney fees because there is no evidence in the record whatsoever proffered by Martie—including, by way of example only, billing records or statements and/or a sworn declaration from counsel—showing the work done and time spent by her counsel in opposing Scott's passport motion. We therefore vacate the attorney fees order based on the lack of (substantial) evidence in the record to support it.

As we further explain, we affirm the child support order because we conclude that the court properly exercised its discretion when it made findings regarding the respective income and expenses of Scott and Martie, which findings we also conclude are supported by substantial evidence in the record.

DISCUSSION

A. *Brief Overview*

Scott is a neurosurgeon, and Martie is a paralegal. They have three children together. Their marriage was dissolved in 2003.

---

[2] Martie states that Scott never filed an appeal to the attorney fees order and thus Martie did not address the merits of this issue in her briefing to this court. However, the record clearly shows Scott on June 21, 2011, filed his notice of appeal of the attorney fees order, which notice was included in the appellate record. Although the failure to serve a notice of appeal neither prevents its filing nor affects its validity (Cal. Rules of Court, rule 8.100, subd. (a)(3)), on this court's own motion we requested further briefing from the parties, which we have read and considered, regarding whether the family court erred when it awarded Martie attorney fees under section 2030.

After Scott's lucrative medical practice failed, he began working as a "locum tenens"[3] neurosurgeon, which often required him to travel for work and thus be away from his children.

In January 2011, Scott filed a motion to obtain passports for the children. According to Scott, Martie in retaliation filed a motion to modify child support based on records she subpoenaed from Scott's employer. Martie contended that although her monthly income remained unchanged, Scott's monthly income had increased from $24,700, as allegedly determined in October 2010, to an average of $39,495.

B. *Attorney Fees*

1. <u>Brief Additional Background</u>

Martie opposed Scott's motion to obtain passports for the three children based on her claims that Scott was mentally unstable, was "terrible" to the children and was apt to flee with them and not return. Included in Martie's opposition was a request for an award of attorney fees of $2,000 pursuant to section 2030.[4]

---

[3]    The term "locum tenens" is defined as "one filling an office for a time or temporarily taking the place of another." (Webster's 3d New Internat. Dict. (2002) p. 1329, col. 1.) The term often is used in connection with "a physician or clergyman." (*Ibid.*; see also *Wasatch Property Management v. Degrate* (2005) 35 Cal.4th 1111, 1121-1122 [noting a court may refer to dictionaries as sources of a word's ordinary, usual meaning].)

[4]    Evidence of the amount of fees sought by Martie was included in documents subject to Scott's opposed motion to augment the record, which this court granted on December 30, 2011.

After the court granted Scott's request to obtain passports for their three children, it turned to the issue of attorney fees. The record shows the court specifically asked Martie if she was seeking $7,000 in fees, to which Martie's counsel responded, "Yes." In considering Martie's request for fees, the court noted that Scott had not filed an income and expense declaration in connection with his opposition to that request. In any event, Scott contended he had "zero money" to pay an attorney fees award to Martie.

The record shows the court carefully considered the arguments of both parties, including reviewing the various documents Scott lodged with the court. Martie, on the one hand, argued that her income was about $3,700 a month, whereas Scott's was about $25,000 a month, although she further noted that the $25,000 figure was based on "dated information" and that Scott's monthly income (discussed *post*) was actually then about $39,000.

Scott, on the other hand, argued that in September 2010 a child support order was based on the finding he earned $18,000 monthly. However, Scott argued he had "zero money" in part because of the ongoing litigation between him and Martie[5] and because of his substantial debt, which included support payments not only for their three children but also for another child from a different relationship.

The parties agreed to use Scott's past income and expense declaration to determine whether Scott then had an ability to pay Martie's attorney fees. Martie noted that Scott's monthly expenses of $14,920 included $2,000 for eating at restaurants and $1,500 in

---

[5]     We note that in the year and a half leading up to the hearing on Scott's passport motion, Scott and Martie had participated in at least 32 hearings on a variety of issues.

groceries, which Martie argued was excessive. According to Martie, even assuming the court used the $18,000 a month income figure for Scott, he had sufficient assets to pay her fees.

At the conclusion of the lengthy hearing, the court awarded Martie $5,000 in fees pursuant to section 2030, ruling as follows:

"I find that there is a disparity in income. I find that there is an ability to pay. Or maybe more accurately, that 'presumption' is the right word because a legal connotation to it, the sense that I would have that somebody at that level of income would be able to afford fees with the level we are talking about. I don't see any evidence to rebut that sort of common sense view. I'll award a total of $5,000 in fees and costs."

2. *Governing Law and Analysis*

Section 2030 provides in relevant part as follows: "[I]n any [related] proceeding subsequent to entry of a . . . judgment [in a marital dissolution action], the court shall ensure that each party has access to legal representation . . . to preserve each party's rights by ordering, if necessary based on the income and needs assessments, one party . . . to pay to the other party . . . whatever amount is reasonably necessary for attorney's fees and for the cost of maintaining or defending the proceeding during the pendency of the proceeding. [¶] . . . When a request for attorney's fees and costs is made, the court shall make findings on whether an award of attorney's fees and costs under this section is appropriate, whether there is a disparity in access to funds to retain counsel, and whether one party is able to pay for legal representation of both parties. If the findings

5

demonstrate disparity in access and ability to pay, the court shall make an order awarding attorney's fees and costs. . . ."  (§ 2030, subds. (a)(1) & (2).)

The public policy underlying section 2030 is to "'"level[ ] the playing field" and permit[ ] the lower-earning spouse to pay counsel and experts to litigate the issues in the same manner as the spouse with higher earnings.'  [Citation.]"  (*In re Marriage of Tharp* (2010) 188 Cal.App.4th 1295, 1315.)  A trial court "'"must consider the respective incomes and needs of the parties, including all evidence concerning income, assets and abilities, in exercising its discretion to award attorney's fees.  [Citations.]"'"  (*In re Marriage of Hobdy* (2004) 123 Cal.App.4th 360, 371.)

We review an attorney fee award under section 2030 for abuse of discretion.  (*In re Marriage of Drake* (1997) 53 Cal.App.4th 1139, 1166.)  The trial court's decision in a particular case will not be disturbed on appeal absent a clear showing of abuse of discretion.  (*In re Marriage of Bergman* (1985) 168 Cal.App.3d 742, 763.)  We must affirm the court's order unless "'no judge could reasonably make the order made.'"  (*In re Marriage of Sullivan* (1984) 37 Cal.3d 762, 769.)

Here, we conclude there is a clear showing of abuse because the court awarded Martie $3,000 more in fees than what she had sought in her responsive declaration in opposition to Scott's passport motion when the record shows there was no evidence whatsoever to support Martie's request for an award of fees in *any* amount.  (Cf. *In re Marriage of Dick* (1993) 15 Cal.App.4th 144, 167 [affirming award of attorney fees when the request for such fees was "supported by lengthy declarations and copies of billings"].)

6

Because there is a lack of substantial evidence, much less any evidence, in the record to support the award, we vacate the attorney fees order.

C. *Modification of Child Support*

1. *Brief Additional Background*

In January 2009, the family court made a temporary order of support in the amount of $1,218 per month, effective August 1, 2008. In connection with that order, the court found Scott's gross income was $10,325, Martie's gross income was $3,500 and Martie's child share was 50.01 percent.

Martie in September 2010 alleged there had been a change in circumstance as Scott's income had increased, and the time share percentages had changed because the oldest child was then living with Martie 100 percent of the time, with the two younger children still living with Martie 50 percent of the time. The matter came on for hearing before Commissioner William Wood.

In ruling to increase Scott's child support obligation, Commissioner Wood rejected Scott's contentions that his income had not increased, that the time share percentages proffered by Martie were inaccurate and that Martie's income should reflect a 40-hour work week. Commissioner Wood thus found Martie's income was $3,648 per month; that Scott's income was $18,083 per month, based on Scott's 2009 tax return; that no guideline deductions were necessary; that the time share for the two younger children was 50 percent and 100 percent for the oldest; and that effective September 1, 2010, Scott's support obligation would be $2,112.

As we noted *ante*, in March 2011 Martie again alleged there had been a change in circumstance as she claimed that Scott's income had increased since Commissioner Wood's findings and order. Martie based her claim on Scott's employment records she subpoenaed that Martie alleged showed Scott was then earning about $39,495 monthly.

At the hearing on Martie's motion, Scott disputed that Martie's gross monthly income was then about $3,726, as reflected by her 2009 and 2010 income tax returns and her paycheck stubs. Scott instead contended that Martie's monthly income was about $8,000 based on her bank statements and his belief that Martie, as a paralegal, was "bartering" to obtain "free" legal services from her counsel that qualified as income under the tax code. Scott also disputed that his income had increased since Commissioner Wood's findings and order in October 2010.

Scott asked the court to appoint a special master to make findings regarding the parties' respective income and expenses and to order Martie to pay all costs associated with that appointment. Although Scott disputed he then was making $40,000 monthly, he acknowledged that in the hearing before Commissioner Wood he had admitted his monthly income was $25,000. However, Scott contended his income then was actually substantially less than that figure because his employment in Redding, California had ended, and the money he earned from that employment was, in his words, an "aberration."

The court noted its assessment of Scott's income was based on figures provided by Scott. The court found Scott's monthly income to be $24,669, based on a 21-month time

8

period. The record shows the court next considered Scott's expenses and concluded Scott was not entitled to a "financial hardship" deduction to his income because "looking at the nature of these expenses, and comparing his total expenses, even dripping wet with all of these things that are on his I&E [income and expense declaration], to the income from self-employment, I don't think that this is an appropriate case for a hardship deduction." As such, the court set Scott's child support obligation at $4,132 per month, or $811 for the first child, $1,235 for the second child and $2,036 for the third child. The court denied Martie's request for fees under section 2030 and Scott's request for appointment of a special master.

2. *Governing Law and Analysis*

An appellate court reviews child support orders for abuse of discretion. (*In re Marriage of Alter* (2009) 171 Cal.App.4th 718, 730.) We review the court's factual findings made in the exercise of its discretion to determine whether they ""are supported by substantial evidence and whether the court acted reasonably in exercising its discretion." [Citation.] We do not substitute our own judgment for that of the trial court, but determine only if any judge reasonably could have made such an order.' [Citation.]" (*Id.* at pp. 730–731.)

In assessing whether substantial evidence supports the trial court's factual findings, we consider the evidence in the light most favorable to the party prevailing below. (*Plumas County Dept. of Child Support Services v. Rodriquez* (2008) 161 Cal.App.4th 1021, 1026.) We accept all evidence supporting the order as true and discard contrary

evidence. (*In re Marriage of Drake*, *supra*, 53 Cal.App.4th at p. 1151.) The order will be affirmed unless the trial court abused its discretion, and it will be reversed only if prejudicial error is found. (*In re Marriage of Williams* (2007) 150 Cal.App.4th 1221, 1233-1234.)

In seeking to modify a child support order, a party must demonstrate a change in circumstance justifying the proposed modification. (*In re Marriage of Laudeman* (2001) 92 Cal.App.4th 1009, 1015; *In re Marriage of Bardzik* (2008) 165 Cal.App.4th 1291, 1304.) On appeal, we review the court's decision against the same standard of review— abuse of discretion. (*In re Marriage of Bardzik*, *supra*, at p. 1304.)

"California has a strong public policy in favor of adequate child support. [Citations.] That policy is expressed in statutes embodying the statewide uniform child support guideline. (See Fam. Code, §§ 4050-4076.) 'The guideline seeks to place the interests of children as the state's top priority.' (§ 4053, subd. (e).) In setting guideline support, the courts are required to adhere to certain principles, including these: 'A parent's first and principal obligation is to support his or her minor children according to the parent's circumstances and station in life.' (§ 4053, subd. (a).) 'Each parent should pay for the support of the children according to his or her ability.' (§ 4053, subd. (d).) 'Children should share in the standard of living of both parents. Child support may therefore appropriately improve the standard of living of the custodial household to improve the lives of the children.' (§ 4053, subd. (f).)" (*In re Marriage of Cheriton* (2001) 92 Cal.App.4th 269, 283, fn. omitted.)

Here, on this record, we conclude the trial court properly exercised its discretion when it found: (i) there had been a change in circumstance to justify the proposed modification (see *In re Marriage of Bardzik*, *supra*, 165 Cal.App.4th at p. 1304); (ii) Martie's gross monthly salary was $3,726, as reflected by her 2009 and 2010 income tax returns and paycheck stubs (see *In re Marriage of Loh* (2001) 93 Cal.App.4th 325, 332 [recognizing that a parent's gross income as stated in recent tax returns is presumptively the correct income for determining child support obligations]); and (iii) Scott's monthly salary was $24,669, or a little less than the $25,000 figure Scott admitted to earning both in the hearing on Martie's motion and previously in the hearing before Commissioner Wood. We further conclude these findings are supported by substantial evidence in the record.

We reject Scott's contention that the court erred and abused its discretion when it used a 21-month sampling period in determining Scott's average monthly income for purposes of his child support obligation. Typically, to arrive at the "monthly net disposable income" (§ 4060), a court divides the annual income figure by 12 as there is an assumption that past income is a good measure of future income. (*Ibid.*; see also *M.S. v. O.S.* (2009) 176 Cal.App.4th 548, 554 [noting that "'past income is a good measure of the future income from which the parent must pay support'"].) However, when income fluctuates, as is true in the instant case, a court may exercise its sound discretion and determine a fair and representative time sampling from which to calculate average monthly income. (*In re Marriage of Riddle* (2005) 125 Cal.App.4th 1075, 1081.)

11

In the instant case, the record shows some months Scott earned substantial income and other months he earned very little, if any, income. Even Scott recognizes that calculating his income can be "complex." Mindful of the fluctuations in Scott's monthly income, the court properly exercised its discretion and went beyond the 12-month time period to calculate Scott's average monthly income. That in making this determination the court also included the time period previously considered by Commissioner Wood, in our view, does not constitute an abuse of discretion inasmuch as we agree with the trial court that, given the fluctuations in Scott's income, using a longer time period was a better indicator to calculate Scott's true "monthly net disposable income." (See § 4060; see also *In re Marriage of Riddle*, *supra*, 125 Cal.App.4th at p. 1082 [noting that "the time period on which income is calculated must be long enough to be *representative,* as distinct from *extraordinary*"].)

In a related argument, Scott separately contends the court erred and abused its discretion when it used his past income to determine his future income from which he must pay support. Specifically, Scott contends section 4060 and case law are "clear" that when income fluctuates, as is true in his case, a court lacks discretion to consider past income and instead must base child support on prospective earnings. We disagree.

First, the plain language of section 4060 does not support Scott's contention. This statute provides: "The monthly net disposable income shall be computed by dividing the annual net disposable income by 12. If the monthly net disposable income figure does not accurately reflect the actual or prospective earnings of the parties at the time the

determination of support is made, the court may adjust the amount appropriately."
(§ 4060.)

We discern no language in section 4060 requiring the court to base child support only on prospective earnings when those earnings fluctuate. (See *Yolo County Dept. of Child Support Services v. Lowery* (2009) 176 Cal.App.4th 1243, 1246 ["The fundamental rule of statutory interpretation is to ascertain the intent of the Legislature as to the purpose of the law by first looking at the plain meaning of the words in the statute," and "'[i]f there is no ambiguity in the language of the statute, "then the Legislature is presumed to have meant what it said, and the plain meaning of the language governs." [Citation.]'"].)

To the contrary, section 4060 expressly gives a court the discretion to adjust the amount of "actual or prospective earnings" when the presumptive benchmark (i.e., dividing the annual net disposable income by 12) does not accurately reflect a party's "monthly net disposable income." (See § 4060.) We therefore decline Scott's invitation to read language into section 4060 that does not otherwise exist. (See *Fair v. Fountain Valley School Dist.* (1979) 90 Cal.App.3d 180, 187 ["The role of the courts is not to legislate or to rewrite the law, but to interpret what is before them."].)

Moreover, the cases Scott relies on also do not support his contention. In *In re Marriage of Mosley* (2008) 165 Cal.App.4th 1375, for example, the court held the trial court abused its discretion when it found there was no change of circumstances after the father in that case was terminated from his employment as a partner in a large law firm,

13

where he was making what the court described as a "hefty income" (*id.* at p. 1379), and took a new position working in-house for a homebuilder in a difficult economy where he made less than half of his former annual salary but had the opportunity to receive a substantial, end-of-the-year discretionary bonus. (*Id.* at pp. 1384-1385.) In reaching its decision, the court in *In re Marriage of Mosley* noted it was unreasonable for the trial court to consider the father's substantial bonus in determining whether there was a change in circumstances "based on only a one-year history [of working] with the homebuilder . . . ." (*Id.* at p. 1386; cf. *M.S. v. O.S.*, *supra*, 176 Cal.App.4th at pp. 556-557 [the father's semi-annual bonuses properly included as income in determining his child support obligation when evidence showed the father was unemployed and received his entire income from an Indian tribe's ongoing gaming revenues and there was no evidence suggesting he would not continue to receive such bonuses in the future].)

The facts of *In re Marriage of Mosley* are vastly different from the facts of the instant case. In contrast to the father in *In re Marriage of Mosley*, Scott does not receive an annual salary, which would make it far easier to calculate his "monthly net disposable income" pursuant to section 4060. In addition, a key issue in *In re Marriage of Mosley* that is absent in the case before us involved whether the father's receipt of a one-time discretionary bonus should be included as income in determining his "monthly net disposable income." (See § 4060.) *In re Marriage of Mosley* thus does not support Scott's contention.

14

Scott's reliance on *County of Placer v. Andrade* (1997) 55 Cal.App.4th 1393 is also unavailing. There, the trial court excluded the father's bonus and overtime pay from his "annual gross income" (§ 4058) in calculating his support obligation, despite evidence the father had earned bonus and overtime pay for two and one-half years before the support hearing. (*County of Placer v. Andrade*, *supra*, at p. 1396.) In reversing the trial court's order and remanding the matter, the court concluded that the trial court "cannot deduct predictable overtime and bonuses in determining [father's] prospective earnings merely because they occur sporadically." (*Ibid.*) The court further concluded that the trial court "can disregard past bonus and overtime payments from the calculation [for child support] only if it determines that [father] is unlikely to receive them in the future" and that for father to make this showing, he needed to proffer "admissible evidence." (*Id.* at p. 1397.)

*County of Placer v. Andrade* does not stand for the proposition espoused by Scott that only prospective earnings should be used in determining support obligations when a party's income fluctuates. In fact, *County of Placer v. Andrade* actually supports the opposite conclusion, as there the court held it was error for the trial court to exclude "predictable" (i.e., past) bonuses and overtime pay merely because they were earned sporadically. (*Id.* at p. 1396.) As such, we reject Scott's contention that a court must use only prospective earnings to determine a party's "monthly net disposable income" when that party's income fluctuates.

15

Scott also contends the trial court erred because it should have deducted debt repayment from his income for purposes of determining his support obligation. In support of this theory, Scott cites to *In re Marriage of Kirk* (1990) 217 Cal.App.3d 597.

Briefly, in *In re Marriage of Kirk* the court reversed the trial court's order modifying the father's child support obligation after the trial court refused to include $4,450 as monthly income because the father had entered into an employment agreement requiring him to pay his employer this amount each month in return for debt cancellation. (*In re Marriage of Kirk*, *supra*, 217 Cal.App.3d at pp. 600-601.) In so doing, the court noted that the father had contractually shifted income from the control of an earning parent to a creditor and that if the court sanctioned "this sort of transaction [it] can envision all manner of special contracts, with employers or others . . . , which shift funds from available income to utilization for other purposes benefiting the parent (such as savings plans, retirement plans, miscellaneous fringe benefits), resulting in the contention that the support order must be reduced." (*Id.* at p. 607.)

*In re Marriage of Kirk* clearly does not support Scott's contention that involuntary debt repayment is a *deduction* from income. Rather, this case actually supports the opposite contention.

Scott also contends the trial court erred when it "lumped" all of his requests for deductions/offsets for expenses he incurred for his child from another relationship into the severe "financial hardship" deduction codified in section 4070 et seq.

16

Section 4070 provides: "If a parent is experiencing extreme financial hardship due to justifiable expenses resulting from the circumstances enumerated in Section 4071, on the request of a party, the court may allow the income deductions under Section 4059 that may be necessary to accommodate those circumstances."

Section 4071 provides in part: "(a) Circumstances evidencing hardship include the following:

"(1) Extraordinary health expenses for which the parent is financially responsible, and uninsured catastrophic losses.

"(2) The minimum basic living expenses of either parent's natural or adopted children for whom the parent has the obligation to support from other marriages or relationships who reside with the parent. The court, on its own motion or on the request of a party, may allow these income deductions as necessary to accommodate these expenses after making the deductions allowable under paragraph (1)."

Our review of the record shows that Scott agreed with the trial court's conclusion that such expenses should be considered in connection with the severe financial hardship deduction:

"THE COURT: . . . I think the things that you're mentioning aren't really deductions from income. They're more expenses. And they're more in the nature of, you know, a hardship deduction or whatever, given the expenses.

"THE RESPONDENT [Scott]: Well, that's where I put them [on the I&E].

17

"THE COURT:  Right.  I agree.  And so, but right now you were characterizing them as deductions from gross income.  So I think it's more accurate to do what you did in your statement.  [¶]  And in deciding whether to do a hardship deduction, looking at the nature of these expenses, and comparing his total expenses, even dripping wet with all of these things that are on his I&E, to the income from self-employment, I don't think that this is an appropriate case for a hardship deduction.  I have not made such a deduction in the past in any case.  And I'm certainly not going to do it in this case.  It's not appropriate."

We agree with Scott's contention that it was irrelevant to his case whether the trial court in other cases had applied the severe financial hardship deduction.  However, we conclude the record shows the trial court properly exercised its discretion in the instant case when it refused to reduce Scott's income for reasons of extreme financial hardship.  Indeed, the record shows that Scott's monthly income was then $24,669 and that he was then paying $1,100, or less than 5 percent of his monthly income, in support for his child from another relationship.  We further conclude this finding is supported by substantial evidence.  (See *Kern County Dept. of Child Support Services v. Camacho* (2012) 209 Cal.App.4th 1028, 1036 [in reviewing factual findings regarding support obligations we make all reasonable inferences in support of the findings and do not reweigh the evidence or second-guess the trial court's credibility determinations].)

Finally, Scott also raises other contentions that would require us to make new factual findings based on (conflicting) evidence in the record, something we cannot do in

18

this case based on the applicable standard of review.[6]  As such, we reject Scott's contention that the trial court erred when (i) in calculating his "monthly net disposable income" (see § 4060) it refused to exclude or otherwise limit his income from the work he performed in Redding, California from August 2010 to February 2011 because Scott contends those earning were an "aberration"; (ii) it refused to impute additional income to Martie and to modify her income based on Scott's claims his former wife allegedly has not been honest "in her court documents, her I&E, or her tax returns" about "her income, the sources of her income, and her expenses," including his claim that his wife received income as a result of "bartering" her services as a paralegal in return for receiving "free" legal services from her counsel; and (iii) it discounted Scott's unreimbursed job-related expenses that Scott contends averaged $850 monthly to $200 per month.

---

[6]     We acknowledge that Scott is representing himself in this proceeding, as he did in the trial court.  However, "[w]hen a litigant is appearing in propria persona, [the litigant] is entitled to the same, but no greater, consideration than other litigants and attorneys." (*Nelson v. Gaunt* (1981) 125 Cal.App.3d 623, 638; see also *Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246–1247.)

DISPOSITION

The June 1, 2011 order requiring Scott to pay Martie $5,000 in attorney fees is vacated for lack of substantial evidence in the record. The June 24, 2011 order increasing Scott's child support obligation from $2,000 to $4,132 is affirmed. Each party to bear his or her own costs of appeal.

_____

BENKE, Acting P. J.

WE CONCUR:

_____

HUFFMAN, J.

_____

IRION, J.

20