Filed 12/24/13  In re Marriage of Delgado CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

### COURT OF APPEAL, FOURTH APPELLATE DISTRICT

### DIVISION ONE

### STATE OF CALIFORNIA

| | |
|---|---|
| In re the Marriage of ALLISON and CARLOS DELGADO. | |
| ALLISON McCALL, | D060905 |
| Appellant, | |
| v. | (Super. Ct. No. D487966) |
| CARLOS DELGADO, | |
| Respondent. | |

APPEAL from a judgment of the Superior Court of San Diego County, Adam Wertheimer, Commissioner.  Affirmed in part; reversed in part with directions.

The Law Office of Frank E. Dougherty and Frank E. Dougherty for Appellant.

Kershek & Shular, Noelle J. Slattery; Boudreau Williams and Jon R. Williams for Respondent.

In this marital dissolution action between Allison McCall and Carlos Delgado, Allison appeals from a judgment on reserved issues.[1]  She contends the trial court erred by imputing

---

[1]     As is customary in family law cases, we will refer to the parties by their first names for convenience and clarity, intending no disrespect.

income to her for the purpose of calculating Carlos's monthly child support payment and by awarding attorney fees to Carlos. We reverse the portion of the judgment awarding child support and direct the trial court to recalculate support. We otherwise affirm.

FACTUAL AND PROCEDURAL BACKGROUND

The parties were married in March of 1998 and separated in 2004.[2] There are two children of the marriage—a daughter born in 1995, whom Carlos adopted, and a daughter born in 1999. The court entered a status-only judgment of dissolution in March 2006. In September 2009, the court entered a child support order that required Carlos to pay monthly child support in the amount of $1,421 consisting of $710.50 for each child. The support order included findings that Carlos had gross monthly income of $6,709 and Allison had gross monthly income of $4,152.

In March 2010, Carlos filed an order to show cause (OSC) to modify child support. He alleged that he had been laid off from his employment of 18 years with the architectural firm Raymond Fox & Associates (Fox) and had received his last paycheck in July 2009. He requested that his child support be lowered to reflect his actual income and that Allison, who had remarried, contribute to his attorney fees based on "the huge disparity" between his and her income and his belief that she was not incurring attorney fees because her attorney was her father-in-law. He filed an income and expense declaration showing he was collecting unemployment benefits of $1,800 per month.

---

[2] Allison filed a trial brief in which she stated the date of marriage was March 17, 1998, and the date of separation was January 8, 2004. Carlos filed a trial brief in which he stated the parties were married on March 7, 1998, and separated on August 14, 2004. In his respondent's brief, Carlos states the parties separated on April 14, 2004. A stipulated judgment entered in April 2006 states that "[f]or the purpose of dividing [Carlos's] pension benefits, the date of separation shall be August 1, 2004."

In July 2010, Allison filed an income and expense declaration in which she stated that her employment as a public school teacher ended in April 2010 and she was collecting state disability benefits in the amount of $2,288 per month. She reported that her husband's monthly income was $17,500 per month and that they had average monthly household expenses of $7,637.

In August 2010, Allison filed a motion for an award of attorney fees against Carlos under Family Code[3] sections 2030 and 3652.[4] She also requested sanctions in the amount of $20,000 against Carlos and Fox under section 271, and damages against Fox under Civil Code section 1714.41. She alleged: "[Fox and Carlos] conspired to avoid [Carlos] paying child support by falsely reporting that [Carlos] had been laid off by [Fox] on July 27, 2009, allegedly just one week before the court ordered . . . an increase in [Carlos's] child support obligation. [Fox] continued to compensate [Carlos], directly and indirectly, and [Carlos] has continued to work for [Fox] since [July 27, 2009], but [Fox] has not deducted child support from the compensation paid, despite a wage assignment order served on [Fox]. [Fox and Carlos] have further defrauded the government of unemployment compensation."

In a declaration in support of her motion, Allison stated that she left her teaching job on disability due to complications of pregnancy. Her son "Franky" was born in June 2010 and began having seizures soon after birth. Franky also had a "latching" problem that complicated his ability to nurse. Allison averred that she could not return to work because Franky required

_____

3     All subsequent statutory references are to the Family Code unless otherwise specified.

4     Section 3652 provides: "Except as against a governmental agency, an order modifying, terminating, or setting aside a support order may include an award of attorney's fees and court costs to the prevailing party."

3

"constant vigilant attention, hospitalization once or twice a month, and regular, sometimes difficult, administrations of medication and cannot be placed in a day care." She stated her only income was from family leave.

In October 2010, Carlos reported in an income and expense declaration that Fox had rehired him on August 8, 2010, at the reduced salary of $3,200 per month. Carlos also filed a declaration in which he denied Allison's allegations that he had conspired with Fox to avoid child support and disputed Allison's claim that she was unable to return to work. Carlos asked the court to impute Allison's previous salary to her.

The parties tried the matter to the court over two days in January 2011. The court heard testimony from Allison, Carlos, Raymond Fox, and two private investigators that Allison hired to obtain evidence that Fox had not laid off Carlos. The court filed a statement of decision on February 22, 2012, setting forth certain stipulated facts and the court's findings on contested matters. Regarding Allison's conspiracy claim, the court found "the evidence does not show a concerted, grand scheme or conspiracy by [Carlos] to defraud either [Allison] or the government." The court found that Carlos's gross monthly income from April 1, 2010, through the end of July 2010 was $1,800 from unemployment benefits, and from August 1, 2010, to the present is $3,200, as stated in his income and expense declarations. Allison does not challenge these findings on appeal.

Regarding Allison's income, the court found that Allison could have returned to her former employment but chose to remain unemployed to care for her new disabled child. Finding Allison had voluntarily divested herself of income and the means to support her other

4

children as required by section 3900, the court used Allison's former monthly income of $4,152 to calculate child support, with a deduction of $342 for mandatory retirement payments.

The court denied Allison's request for sanctions, finding Allison failed to show that Carlos had committed fraud or any other potentially sanctionable conduct under section 271. Regarding need-based attorney fees under section 2030, the court observed that even without imputing income to Allison, her "litigating power and ability to fund her litigation is far superior to [Carlos's]." Accordingly, the court denied Allison's request for attorney fees and costs and ordered her to contribute $7,500 toward Carlos's attorney fees and costs under sections 2030 and 3652. The court found Allison had "the ability to pay the fees by way of her income and assets, her community interest in her husband's income, the household income, and the community assets."[5]

The court explained that it had considered Allison's husband's income in awarding attorney fees and costs because "it is extraordinary per Family Code section 4057.5[, subd.] (b), and [Allison] has a community property interest in it. To not consider this income would be unjust and inappropriate given the totality of the circumstances. Included in the Court's consideration of this issue is that [Allison's] father-in-law is her attorney and the evidence has shown that he has not demanded that payment actually be made, only payment of costs. He has kept time and issued billing statements, but the evidence supports a finding that the amount will never actually be collected."

On September 16, 2011, the court entered the judgment on reserved issues based on its statement of decision. The judgment reduced Carlos's child support obligation, beginning

---

5 The court found Allison's household income was "anywhere from five times to [10] times or more greater than [Carlos's]."

August 1, 2010, to $842 per month, consisting of $231 for his older daughter and $611 for his younger daughter. For the period from April 2010 through July 2010, the court ordered Carlos to pay $448 per month, consisting of $5 for his older daughter and $443 for his younger daughter.

DISCUSSION

## I. *Imputation of Income*

Allison contends the court's decision to impute income to her was an abuse of discretion because substantial evidence did not support a finding that she voluntarily left her teaching job or had a current opportunity to return to it after her disability ended.

We review a child support order for abuse of discretion and, in doing so, determine whether substantial evidence supports the factual findings made in connection with the order. (*In re Marriage of Alter* (2009) 171 Cal.App.4th 718, 730.) In applying the abuse of discretion standard, we do not substitute our judgment for that of the trial court; we consider only whether any judge reasonably could have made the order. (*Id.* at pp. 730-731.) However, the court must follow established legal principles in exercising its discretion, and we apply the independent or de novo standard of review in determining whether it did so. (*Id.* at p. 731.)

Section 4058, subdivision (b) provides that in determining child support, "[t]he court may, in its discretion, consider the earning capacity of a parent in lieu of the parent's income, consistent with the best interests of the children." " 'For purposes of determining support, "earning capacity" represents the income the spouse is reasonably capable of earning based upon the spouse's age, health, education, marketable skills, employment history, and the availability of employment opportunities.' " (*In re Marriage of Cheriton* (2001) 92

6

Cal.App.4th 269, 301 (*Cheriton*).) Courts may impute income based on earning capacity to either a payor or payee parent. (*Ibid.*)

" 'Earning capacity is composed of (1) the ability to work, including such factors as age, occupation, skills, education, health, background, work experience and qualifications; (2) the willingness to work exemplified through good faith efforts, due diligence and meaningful attempts to secure employment; and (3) an opportunity to work which means an employer willing to hire. . . . [¶] . . . When the ability to work or the opportunity to work is lacking, earning capacity is absent and application of the standard is inappropriate. When the payor is *unwilling* to [work] and the other two factors are present, the court may apply the earnings capacity standard to deter the shirking of one's family obligations.' " (*Mendoza v. Ramos* (2010) 182 Cal.App.4th 680, 685.) "The party seeking to have income imputed bears the burden of demonstrating [ability and] opportunity to earn that income: the burden 'cannot be met by evidence establishing merely that a spouse continues to possess[] the skills and qualifications that had made it possible to earn certain salary in the past—even where it was undisputed that the spouse had voluntarily left that prior position.' " (*Ibid.*; *In re Marriage of Bardzik* (2008) 165 Cal.App.4th 1291, 1294, 1303 [parent seeking modification of an existing order to have income imputed to the other parent bears the burden of proof to show the other parent has the ability and opportunity to earn the imputed income].)

We conclude there is insufficient evidence to support the trial court's finding that Allison had the ability to return to her teaching position after her disability leave ended. Allison testified that she went on disability leave in April 2010 at her doctor's direction because she was having preterm contractions. She intended to return to work at the beginning

of the next school year. However, Franky was born in June 2010 and began having life-threatening seizures that day.

At the time of trial, Franky was seven months old and had been hospitalized seven times because of seizures. He was developmentally delayed and had microcephaly, meaning his head was small and his brain was not developing normally. He also had been diagnosed with corticopetal vision impairment. He had difficulty nursing and latching during breast-feeding. He did not smile like a normal baby and was unable to hold his head up normally, and he struggled with trunk control (pushing up from his chest). He received services for those problems, including occupational and physical therapy and three sessions a week with an infant educator, and he would eventually receive vision therapy. Allison and her husband had taken an advanced cardiopulmonary resuscitation course because of the possibility that Franky could stop breathing during a seizure. At the time of trial, Franky's breast-feeding had improved, but there had been no improvement in his seizure condition or other medical problems. Franky's pediatrician recommended Allison care for Franky "if at all possible," and Allison testified she was unable to work because she needed to take of him.

In light of Allison's uncontroverted testimony about Franky's special needs and the level of care he required, the issue of whether there was substantial evidence that Allison had the ability to return to her teaching position at the beginning of the 2010-2011 school year turns on whether there was sufficient evidence to support a finding that someone other than Allison, with the help of her husband, could have provided the care Franky required if Allison had returned to work. There is no such evidence in the record. The court in its statement of decision inaccurately stated: "[Allison] testified that she could place [Franky] in child care, but

8

[Franky] would not receive the level of care that she provides."  On cross-examination, Allison testified that she was *not* aware of day care facilities that serviced special needs children.  She then testified:  "Actually, I looked, recently, for *preschools* and some have day cares that take care of special needs kids or have programs for special needs.  *So that's a way off, I guess.*"[6] (Italics added.)

Allison's testimony was evidence that Franky may be able to attend a *preschool* that could provide the special care he needs when he reaches preschool age, but it was not evidence that there *presently* was a day care facility that could care for him.  Apart from Allison's testimony, there is no evidence in the record addressing the level of care Franky required, and there is no evidence showing that Allison could have obtained adequate care for him outside the home if she had returned to her full-time teaching position.  Thus, Carlos did not meet his burden of showing Allison had the ability to earn the income she formerly earned from her teaching position, and the court erred in imputing that income to her for purposes of calculating child support.[7]

---

[6]     At that point, counsel conducting the cross-examination said, "I missed that last part." Allison repeated, "That's a ways off, preschool."

[7]     Further, as the *Cheriton* court noted, "no authority permits a court to impute earning capacity to a parent unless doing so is in the best interest of the children.  By explicit statutory direction, the court's determination of earning capacity must be 'consistent with the best interest of the children.' "  (*Cheriton, supra,* 92 Cal.App.4th at p. 301.)  Here, the court's statement of decision does not include a finding that imputing income to Allison was in the children's best interest.  On its face, the court's child support award based on Allison's imputed income appears not to be in the children's best interest because it results in a reduced monetary award.  As Witkin observes, "where imputation of earning capacity to the payee spouse would result in an overall reduction of monetary support for the child, it is difficult to imagine how the child's interest would be served by an imputation of earning capacity."  (10 Witkin, Summary of Cal. Law (10th ed. 2005) Parent and Child, § 398, p. 501, citing *Cheriton, supra,*

## II. *Attorney fee Award*

Allison contends the court erred in ordering her to contribute $7,500 toward Carlos's attorney fees and costs under sections 2030 and 3652.  As noted, the court found Allison had "the ability to pay the fees by way of her income and assets, her community interest in her husband's income, the household income, and the community assets."  The court considered Allison's husband's income in awarding attorney fees and costs based on the finding that it was extraordinary under section 4057.5, subdivision (b).[8]  The court concluded it would be unjust and inappropriate to not consider Allison's husband's income under the totality of the circumstances.  The court noted that Allison's father-in-law is her attorney and found that he had not demanded payment of his fees.  Although he had kept time and issued billing statements, the court found "the amount will never actually be collected."  We construe this

---

92 Cal.App.4th at pp. 301-302 [finding it difficult to imagine how imputation of income served the children's interest where imputation reduced overall monetary child support and remanding determination of that question to the trial court].)  However, in light of our determination that there was insufficient evidence of Allison's ability to work to support imputation of income to her, we do not remand for the trial court to consider whether imputation is in the children's best interest.

[8]     As Allison points out in her opening brief, section 4057.5 addresses consideration of a parent's subsequent spouse in connection with *child support*, not attorney fees.  Section 4057.5, subdivision (a)(2) provides:  "The income of the obligee parent's subsequent spouse or nonmarital partner shall not be considered when determining or modifying child support, except in an extraordinary case where excluding that income would lead to extreme and severe hardship to any child subject to the child support award, in which case the court shall also consider whether including that income would lead to extreme and severe hardship to any child supported by the obligee or by the obligee's subsequent spouse or nonmarital partner."  Section 4057.5, subdivision (b) provides:  "For purposes of this section, an extraordinary case may include a parent who voluntarily or intentionally quits work or reduces income, or who intentionally remains unemployed or underemployed and relies on a subsequent spouse's income."  However, the fact that the court erroneously cited section 4057.5, subdivision (b), as authority for considering Allison's husband's income in deciding whether to award Carlos attorney fees does not mean the court lacked such authority.

10

statement as a finding that Allison's father-in-law will not require Allison to pay for his services.

Allison essentially argues that the court erred in considering her current husband's income in awarding Carlos attorney fees and costs, and that substantial evidence does not support the court's finding that she would not have to pay attorney fees to her father-in-law.[9] We reject both arguments.

" '[A] motion for attorney fees and costs in a dissolution proceeding is left to the sound discretion of the trial court. [Citations.] In the absence of a clear showing of abuse, its determination will not be disturbed on appeal.' [Citation.] Thus, we affirm the court's order unless ' "no judge could reasonably make the order made." ' " (*In re Marriage of Duncan* (2001) 90 Cal.App.4th 617, 630 (*Duncan*).)

Section 2030 directs that in a proceeding for dissolution of marriage "the court shall ensure that each party has access to legal representation . . . to preserve each party's rights by ordering, if necessary based on the income and needs assessments, one party . . . to pay to the other party, or to the other party's attorney, whatever amount is reasonably necessary for attorney's fees and for the cost of maintaining or defending the proceeding during the pendency of the proceeding." (§ 2030, subd. (a)(1).) "The purpose of [an award under section 2030] is to provide one of the parties, if necessary, with an amount adequate to properly litigate the controversy." (*Duncan, supra,* 90 Cal.App.4th at p. 629.) Further, section 2032 provides that

---

[9] Allison frames her argument regarding the court's consideration of her husband's income as there being (1) insufficient evidence to support a finding that she has a community property interest in her current husband's income, and (2) no legal basis for the court to order her current husband to pay attorney fees to his father. The essential issue that these arguments raise and we must decide is whether the court could properly consider Allison's husband's income as a factor in determining a need-based fee and cost award under section 2030.

11

in determining whether a fee award is just and reasonable under section 2030, a trial court should "tak[e] into consideration, to the extent relevant, the circumstances of the respective parties described in Section 4320." (§ 2032, subd. (b).) "The parties' 'circumstances' as described in section 4320[10] include assets, debts and earning ability of both parties, *ability to pay*, duration of the marriage, and the age and health of the parties." (*Duncan,* at p. 630, italics added.)

This court has noted that "[g]iven this statutory framework, a trial court has wide discretion in fashioning an award of attorney fees in marital proceedings. [Citation.] In assessing one party's relative need and the other party's ability to pay, the family court may consider *all evidence concerning the parties' current incomes, assets, and abilities . . . .*" (*In re Marriage of Sorge* (2012) 202 Cal.App.4th 626, 662, italics added.) Nothing in the statutory scheme precludes the trial court from considering a new spouse's income when evaluating whether to award need-based attorney fees. Although there is a statutory bar to consideration of a new spouse's income for purposes of calculating child support except in extraordinary cases (§ 4057.5), there is no such bar to need-based attorney fees. The trial court did not abuse its discretion in considering Allison's husband's income in assessing whether to award need-based attorney fees under section 2030.

We further conclude there is sufficient evidence to support the court's findings that Allison's father-in-law had not demanded payment of his fees and would not collect the amount he had billed for his representation of Allison. Allison testified she had paid attorney fees to her father-in-law, but when asked if she recalled the specific dates she made payments,

---

10    In a footnote at this point, the *Duncan* court noted that "[s]ection 4320 lists the factors that govern an award of spousal support."

she responded, "My husband handles that." The court received in evidence a transaction history document showing billings from and payments to Allison's father-in-law from the beginning of his representation of Allison through 2010. Although Allison testified that she thought her husband had paid his father fees and costs of $11,890, the transaction history document showed only two payments listed as *costs* that totaled $3,890. When asked if she had paid her father-in-law any fees in 2011, she responded that her husband "handles that with his father" so she "couldn't say." She had not paid an attorney fee bill or seen her husband write a check for one. Based on Allison's testimony, the court could reasonably find she was not obligated to pay the attorney fees her father-in-law billed to her.

The trial court cited *In re Marriage of Paulin* (1996) 46 Cal.App.4th 1378 (*Paulin*) as authority to "consider the representation by a relative who is not likely to collect fees from his client, where the other party has had to pay attorney[] fees and costs, and make an award which will achieve an equitable result." The former husband in *Paulin* (Scott) successfully sought modification of his child support obligation based on a statutory hardship deduction and imputed income to his former wife (Robyn), but the trial court denied his request for attorney fees and costs. Addressing his entitlement to attorney fees *on appeal*, the *Paulin* court stated: "Scott is the prevailing party in this appeal in which Robyn has been represented by her attorney husband. We assume this representation has been without charge to her, while Scott has been charged for his appellate attorney fees. Scott's request for attorney fees on appeal should be presented to the trial court to act in its discretion to achieve an equitable result." (*Id.* at p. 1385.)

13

Given this language in *Paulin*, the trial court reasonably considered the likelihood that Allison's father-in-law would not collect fees from her as a factor in fashioning a need-based attorney fee award under section 2030 that was equitable under the totality of the circumstances. In any event, even assuming there was insufficient evidence to support a finding that Allison's father-in-law would not collect fees billed to her, we conclude that the court properly considered Allison's husband's income in deciding whether to award attorney fees and costs under section 2030, and that its award to Carlos was within its discretion.

## DISPOSITION

The portion of the judgment on reserved issues entered on September 16, 2011, setting Carlos's base child support obligation at $842 per month beginning August 1, 2010, is reversed. The trial court is directed to recalculate child support for that period without imputing income to Allison. In all other respects the judgment is affirmed. The parties shall bear their own costs on appeal.

McCONNELL, P. J.

WE CONCUR:

NARES, J.

O'ROURKE, J.

14